**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SOCOCO, LLC, a Texas Limited Liability Company, | |
| Plaintiff | Civil Action No. |
| v. | |
| ZOOM COMMUNICATIONS, INC., a Delaware Corporation, | **JURY TRIAL DEMANDED** |
| and | |
| WELO INC., a Delaware Corporation, | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Sococo, LLC ("Sococo") brings this action for patent infringement against Zoom Communications, Inc. ("Zoom") and Welo Inc. ("Welo") and for its Complaint alleges as follows:

### INTRODUCTION

This case involves a video conferencing technology that creates a virtual workspace populated by virtual representations or "avatars" of each participant. The Sococo patented platform offers an online office where individuals and teammates can connect with each other via voice, chat, and video using multi-screen technology and cloud applications. Participants using the platform can connect instantly with anyone without response delays. Founded in 2007, Sococo is the earliest and leading developer in virtual workspaces, with over sixty (60) issued U.S. patents and pending applications.

### NATURE OF THE ACTION

1.     This is a civil action for infringement of United States Patent Nos. 7,769,806 ("the '806 patent"); 8,775,595 ("the '595 patent"); 9,069,851 ("the '851 patent"); 8,756,304 ("the '304

patent"), and 11,025,679 ("the '679 patent") (collectively "the patents-in-suit"). The patents-in-suit are generally directed to novel and innovative methods and systems for conducting artificial intelligence ("AI") augmented remote video conferences amongst multiple participants at different locations, using virtual representations of workspace and workers.

2.      Sococo seeks judgment that Zoom and Welo have infringed, and continue to infringe, one or more claims of each patent-in-suit arising out of Zoom's and Welo's commercialization of AI augmented video conferencing services in the United States.

### THE PARTIES

3.      Sococo is a Limited Liability Company organized and existing under the laws of the state of Delaware with its principal place of business at 2028 E Ben White Blvd., Suite 240-2650, Austin Texas 78741.

4.      Upon information and belief, Zoom is a Delaware Corporation having its principal place of business at 55 Almaden Boulevard, 6th Floor, San Jose, CA 95113. Zoom can be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle County, Delaware 19801.

5.      Upon information and belief, Welo is a Delaware Corporation having its principal place of business at 11 Meadowbrook Road, Wellesley, Massachusetts 02481. Welo can be served through its registered agent, The National Registered Agents, Inc., 1209 Orange Street, Wilmington, DE 19801.

### JURISDICTION AND VENUE

6.      This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 271, for infringement of the patents-in-suit.

7.      This Court has exclusive subject matter jurisdiction over the matters pleaded herein under

28 U.S.C. §§ 1331 and 1338(a).

8.      On information and belief, Zoom's United States headquarters are located in the State of California and Zoom also has a regular and established place of business at 255 Almaden Boulevard, 6th Floor, San Jose, CA  95113. Accordingly, this Court has personal jurisdiction over Zoom.

9.      On information and belief, Welo's headquarters are located at 11 Meadowbrook Road, Wellesley, MA  19801.

10.      Venue is proper in this judicial district pursuant to 28. U.S.C. §§ 1391 and 1400 (b) because Zoom and Welo have committed acts of infringement in this District, and both Zoom and Welo are incorporated in Delaware.

11.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Zoom has committed acts of infringement in this District, including by providing infringing services to participants within this judicial District.

12.      Venue is proper as to Welo in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Welo has committed acts of infringement in this District including by providing infringing services to participants within this judicial District.

## RELATIONSHIP BETWEEN ZOOM AND WELO

13.      Welo's website can be visited to download the Welo A.I. augmented conferencing application from anywhere in the United States, including this judicial District.  Visitors to the website are invited to "visit us in our Welo HQ space…[j]ust drop in and we will show you around."[1]

---

[1]

https://www.welo.space/#:~:text=The%20best%20way%20to%20understand%20what%20makes%20Welo%20so%20special.

14.     Welo's website provides instruction on how to integrate the Welo application into a Zoom meeting: "Welo Visual Breakouts brings an immersive visual space to Zoom meetings to create a personal and engaging experience for workshops, project kickoffs, and team meetings."[2] Welo users are directed to the Visual Breakouts page through the Welo User Guide.[3]

15.     Welo's shared place of business with Zoom is demonstrated by Zoom's website which offers Welo's platform for sale and integration with Zoom products.[4]     Welo is listed on the Zoom website in the "Zoom Partners" section:



By clicking "View Solution," the user is directed to a page that describes how Zoom and Welo applications are combined to give a unique user experience:[5]

---

[2] https://drive.google.com/file/d/19l0AWRWixtmZesjRUuU3Mkq8WzoSJYq_/view
[3] https://docs.google.com/document/d/1AvgkQM1pIEZm6DANecBkjWT376-my8CM1qVwYcZTCOw/preview?tab=t.
[4] https://partner.zoom.us/solutions/
[5] https://partner.zoom.us/solutions/welo/



16.     At the same page, users are given the option of clicking a to the Welo.Space website. Alternatively, users can obtain the Welo application through the "Zoom App Marketplace:"



Welo collaboration spaces recreate the feel and flow of working together in a physical space to boost energy, engagement, and results.

Get Welo from the Zoom App Marketplace.

17.     Welo's website describes Zoom as a "partner."  According to the Welo Website, "[t]he Welo app for Zoom is the result of a partnership to build the future of online interactions.  Create memorable events and meetings that spark creativity, elevate engagement, and accelerate results."[6]

18.     On the Zoom website, Welo is described as "currently used in over 100 countries and its team is distributed across the U.S. and Europe" with no exception for Delaware.

19.     On information and belief, Zoom is a major investor in Welo, one of only two listed in public documents.  Zoom has invested in Welo through its wholly owned subsidiary Zoom Ventures.  Zoom Ventures, located at 55 South Almaden Boulevard, Suite 600, San Jose CA 95113 (the same location identified as Zoom's headquarters), identifies Welo as one of its portfolio

---

[6] https://www.welo.space/welo-zoom/#:~:text=The%20Welo%20app%20for%20Zoom%20is%20the%20result%20of%20a.

companies.[7]

20.     Welo's and Zoom's software services are combined to form a single product when customers visit Zoom's website and either acquire the Welo app or use the Welo app to augment Zoom's video conferencing technology.

## FACTUAL BACKGROUND

21.     Founded in 2007, by David Van Wie and Paul Brody, Sococo pioneered the use of AI augmented video conferencing and related internet connectivity years before any other platform offered to do so.  Sococo's platform is available at https://www.sococo.com.  While developing its platform, Sococo sought and was granted numerous patents for its cutting-edge technology.

22.     In 2015, following the departures of its founders, Sococo merged with Postwire, bringing in new Chief Executive Officer Clifford Pollan[8].  Mr. Pollan served as Sococo's Chief Executive Officer (CEO) from 2015 through 2017.  Prior to that, Mr. Pollan was the CEO of Postwire from 2009 to 2015.

23.     In 2020, Mr. Pollan founded Welo LLC, which subsequently became Welo, Inc. Welo competes against Sococo with a platform, methodology, processes and software that creates an AI augmented workspace very similar to Sococo's.  Since founding Welo, Mr. Pollan has been active in participating in numerous interviews where he touts the uniqueness of Welo in an ever-growing remote world.  In one particular interview conducted on June 22, 2023, entitled "Maro Sola's Introduction to Welo with Cliff Pollan, Mr. Pollan describes his approach to Welo[9]:

> I spend a lot of time trying to give people this experience of what it's
> like to work in a virtual space because people can't quite picture that.
> When I sit next to my colleague Phillip who's in Munich Germany
> and I'm sitting here in Boston the United States we're together we

---

[7] https://www.zoom.com/en/zoom-ventures/portfolio/
[8] https://web.archive.org/web/20150407023601/https://blog.sococo.com/news-and-events/sococo-and-postwire-blast-off-together.html
[9] https://www.youtube.com/watch?v=ZeVe4q1SXjw

feel energy, we see each other, we can interact with each other, and
for that matter in a very special way with anybody around the world.

24.    Mr. Pollan's descriptions are similar to an interview given to Remote.co prior to leaving

Sococo.[10]:

> Sococo is an online workplace that allows distributed teams to work
> together in a single place, bringing together people from any location.
> Whether you're in a headquarters, satellite office, home office or in
> an offshore contractor location, Sococo recreates the personal
> proximity and functionality of a physical office needed by teams in
> an online experience. Teams co-locate online in an office space that
> is based in a visual map with avatars representing team members, so
> they always feel like a team, even when everyone is scattered across
> the country or around the world.

25.    In the same interview with Maro Sola, Mr. Pollan describes unique functions of Welo. One

such function relates to privacy and closing a room's door:

> We have things like people often ask us about you know so privacy.
> So we could lock this room and now no one can come in unless they
> knock. Okay now I'll go out and knock and let you let me in okay.
> Okay now I'm allowing Cliff okay um and if I unlock the room just
> like a room in a regular space people could jump in.

26    This functionality for Welo is further described in a July 24, 2024, entitled How-to: Ask to

Join and Knock on Room.[11]

27.    While Mr. Pollan was CEO of Sococo, usage of a closed door for privacy was specifically

discussed in a publicly available article for Sococo.[12]:

> Need a bit of privacy for your conversation or meeting? Close the
> door. Closing the door requires the other people in your space to
> "Knock" (thereby asking permission) before entering the room. Note
> that you can also knock on an open door before jumping into the
> room. (Just like the real world, different teams have different etiquette

---

[10] https://remote.co/company/sococo/
[11] https://www.youtube.com/watch?v=xmTCARpfmLo
[12] https://www.sococo.com/9-top-tips-for-working-in-sococo/

norms when it comes to this.)

28.     Another functionality that Mr. Pollan describes in the interview with Maro Sola, is "a concept of room resources and that's where you can put things um and I'll do uh a little screen share again where in a room it can have context." This functionality is further described in a July 8, 2024, video entitled How-to: Add Room Resources to Rooms in your Welo Space.[13]

29.     This concept of sharing room resources existed in Sococo prior to the conception of Welo. This function is publicly described in Sococo's support documentation as rooms shares[14] where:

> You can use the walls in your Sococo room to share important information and online tools with other members in your office space. Keeping all the necessary information in the same place is a great way to keep everyone involved in a project updated with the latest developments. This article provides the steps to share files or online tools in a room.

30.      Former employees of Sococo have been hired by Welo at a time when Welo was forming its business and developing its software. Philipp Seeser was a senior Software Engineer at Sococo from 2015 to 2018. According to his LinkedIn page, Mr. Seeser co-founded Welo in 2020. He describes Sococo as a former place of work as follows:

> Sococo is the online workplace where distributed teams come to work together each day, side-by-side. No matter where team members might be. Down the hall, across campus, or halfway around the world – working in your organization's online office is even more productive than being on the same floor or in the same room.

Mr. Sesser departed Welo in January 2024.[15]

31.     Another former employee of Sococo, David Catalanotto, joined Welo in March 2021 as "Client and Partner Advisor." According to his LinkedIn page, Mr. Catalanotto was employed by

---

[13] https://www.youtube.com/watch?v=rZIEGsRSkUM
[14] https://support.sococo.com/hc/en-us/articles/360017682720-Sharing-Files-Whiteboards-and-Other-Links-in-a-Room
[15] https://www.linkedin.com/in/philipp-seeser/details/experience

Sococo from 2016 to 2018 as Senior Enterprise Account Manager. Further to the LinkedIn page, Mr. Catalanotto was a decision maker at Sococo responsible for its major business initiatives:[16]

> Engaged, sold and renewed major global organizations to initiate contact and establish enterprise accounts within banking, financial services, healthcare, hospitality, insurance, news outlet, and retail sectors. Differentiated the value of the product within a competitive and confusing market environment.

32.    Another former employee of Sococo, Alex Swanson, was employed by Welo as a Design Advisor from August 2020 to October 2022. According to his Linkedin page, Mr. Swanson was employed by Sococo from October 2015 to October 2017 as a Design Lead/Creative Director.

33.    Yet another former employee of Sococo, Justin DuJardin, was employed by Welo as a consultant from April 2021 to September 2023. According to his Linkedin page, Mr. DuJardin was employed by Sococo from November 2012 to August 2017 and held various positions such as Web Developer, Director of Engineering and Chief Architect.

34.     Another former Sococo employee, Henry Wong, was hired by Welo as a Principal Software Engineer, after being a Senior Software Engineer at Sococo from November 2014 to September 2019.

35.    The extent to which Welo, and by association, Zoom, used knowledge gained at Sococo to build the Welo application is not yet known but will likely become known through discovery.

36.    An example of a Sococo virtual AI augmented meeting space is shown below:

---

[16] https://www.linkedin.com/in/dcatalanotto



37.    An example of a Welo/Zoom combined augmented meeting space is shown below:

 

38.    Zoom and Welo's platforms infringe at least one claim of each patent-in-suit, directly, indirectly, and by joint infringement.

## THE '806 PATENT

39.    The '806 patent, identifying David Van Wie and Paul J. Brody as the inventors, was filed on October 24, 2007, as application serial number 11/923,629, entitled "AUTOMATED REAL-TIME DATA STREAM SWITCHING IN A SHARED VIRTUAL AREA COMMUNICATION ENVIRONMENT," and issued on August 3, 2010. A true copy of the '806 patent is attached hereto as Exhibit A.

40.    Sococo owns the entire right, title and interest in and to the '806 patent, including the right

to sue and recover damages, including damages for past infringement.

41.    The '806 patent has forty-two claims, eighteen of which are independent (1, 3, 8, 10, 16-19, 21, 23, 24, 27, 31, 37-40 and 42) and the remaining twenty-four of which are dependent.

42.    The patent is described as a method of switching real-time data stream connections between network nodes sharing a virtual area. (*See* '806 patent, Col. 4 at 7-9) An example of a system implementing the invention is shown at FIG. 3:



43.    FIG. 4 of the '806 patent shows a block diagram of a network node that includes an exemplary set of sources and an exemplary set of sinks:



 (*Id.*, FIG. 4; Col. 7 at 62-67)

44.    According to the '806 patent, a "virtual area" is a representation of a computer-managed space or scene.   Virtual areas may be two-dimensional or three-dimensional representations.

Oftentimes, a virtual area is designated to simulate a physical, real-world space. (*Id.*, Col. 6 at 3-20.)

45.     As used in the claims of the '806 patent, a virtual area specification is stored and comprises a description of one or more switching rules each of which defines a respective connection between sources of a respective real-time data stream type and sinks of the real-time data stream type in terms of positions in the virtual area. (*Id.*, Col. 4 at 47-50.)

46.     The switching rules define the respective connection between sources of respective real-time data stream type and sinks of the real-time data stream in terms of positions in relation to geometric elements of the virtual area. (*Id.*, Col. 4 at 54-58.)

47.     According to the '806 patent, one or more real-time data stream connections are made between network nodes associated with respective objects. Each object is associated with at least one of a source and a sink of one or more of the real-time data stream types.

48.     Establishing is based on one or more switching rules, the respective sources and sinks associated with the objects, and the respective positions of the objects in the virtual area. This can be seen in FIG. 11:



FIG. 11

(*Id.*, Col. 3 at 26-28)

## THE '595 PATENT

49.     The '595 patent, identifying Matthew Leacock, David Van Wie and Paul J. Brody as the

inventors, was filed on September 9, 2011, as application serial number 13/229,395, entitled "RELATIONSHIP BASED PRESENCE INDICATING IN VIRTUAL AREA CONTEXTS," and issued on July 8, 2014. A true copy of the '595 patent is attached hereto as Exhibit B.

50.    Sococo owns the entire right, title and interest in and to the '595 patent, including the right to sue and recover damages, including damages for past infringement.

51.    The '595 patent has twenty-three claims, four of which are independent (1, 4, 9, and 20) and the remaining nineteen of which are dependent.

52.    The patent describes improved systems and methods for indicating presence in a network communications environment. The methods include rich presence signaling through virtual area-based contextualization with relationship-based communicant targeting to provide a unique personalize communication environment for each user.   (See Ex. B, '595 patent, Col. 5 at 57-60.)

53.    A representation of a user's contextualized being broadcasted to a target set of communicants according to the '595 patent is shown in FIG. 2:



FIG. 2

54.    A "communicant" according to the '595 patent is a person who communicates or otherwise interacts with other persons over one or more network connections, where the communication or interaction may or may not occur in the context of a virtual area.  A "user" is a communicant who is operating a particular network node that defines a particular perspective for descriptive purposes. (*Id*., Col. 2 at 53-58.)

55.    A user receiving contextualized presences from a target set of communicants in accordance with the '595 patent is shown in FIG. 4:



FIG. 4

**THE '851 PATENT**

56.    The '851 patent, identifying David Van Wie and Joseph Altmaier as the inventors, was filed on March 1, 2012, as application serial number 13/409,344, entitled "CLIENT APPLICATION INTEGRATING WEB BROWSING AND NETWORK DATA STREAM PROCESSING FOR REALTIME COMMUNICATIONS," and issued on June 30, 2015. A true copy of the '851 patent is attached hereto as Exhibit C.

57.    Sococo owns the entire right, title and interest in and to the '851 patent, including the right to sue and recover damages, including damages for past infringement.

58.    The '851 patent has thirty-nine claims, three of which are independent (1, 38 and 39) and the remaining thirty-six of which are dependent.

59.    The '851 patent includes a graphical user interface that includes at least one communication control for managing communications with other network nodes and at least one browser control for navigating to different network resource addresses.  (*Id*., Abstract)

60.    Referring to Figures 1 and 2 from the '851 patent, reproduced below,

Fig. 1 shows one preferred embodiment which includes a client network node 12 and one or more other client network nodes 14.  A virtual environment creator 18 is interconnected by a network

20. (*Id.*, Col. 5 at 18-23.)



61.    Fig. 2 is an example 160 of the client communications application 28 that interfaces with audio 168, display 170, input 172 and networking 174 components of the client network node 12. (*Id.*, Col. 7 at 36-43) The user interface 162 generates a graphical user interface that provides a single point of control for a user's real-time communications and web browsing experiences. (*Id.*, Col. 7 at 43-45.)

## THE '304 PATENT

62.    The '304 patent, identifying David Van Wie, Matthew Leacock, and Paul J. Brody as the inventors, was filed on September 9, 2011, as application serial number 13/229,349, entitled "RELATION BASED PRESENCE INDICATING IN VIRTUAL AREA CONTEXTS," and issued on June 17, 2014. A true copy of the '806 patent is attached hereto as Exhibit D.

63.    Sococo owns the entire right, title and interest in and to the '304 patent, including the right to sue and recover damages, including damages for past infringement.

64.    The '304 patent has thirty-one claims, three of which are independent (1, 29 and 30) and the remaining twenty-eight of which are dependent.

65.    The patent describes, and claims methodology and structures related to establishing a user's presence in a particular zone of a virtual area that is assigned to user.  An indication of the user's presence is transmitted to communicants who have a relationship with the user. (*See* '304 patent, Col. 4 at 7-9) An example of a system implementing the invention is shown at FIG. 1:



FIG. 1

66.    As described in the '304 patent and seen in FIG. 1, a network communications environment 10 includes a first client network node 12 and a second client network node 14 and a virtual environment creator 18, all interconnected via a network 20. (*Id*., Col. 6 at 17-22.)  User presence in a particular zone of a virtual environment is transmitted to each of one or more communicants conditioned on having a social network tie based on governance rules associated with the particular zone.  (*Id.*, Col. 8 at 54-67.)

**THE '679 PATENT**

67.    The '679 patent, identifying David Van Wie, Matthew Leacock, Eric Cozzi, and Paul J. Brody as the inventors, was filed on August 31, 2018, as application serial number 16/120,026, entitled "VISUAL COMMUNICATIONS," and issued on June 1, 2021. A true copy of the '679 patent is attached hereto as Exhibit E.

68.    Sococo owns the entire right, title and interest in and to the '679 patent, including the right to sue and recover damages, including damages for past infringement.

69.    The '679 patent has seventeen claims, of which claim 1 is independent and the remaining sixteen of which are dependent.

70.    The patent describes, and claims methodology and structures related to a persistent virtual area that supports the establishment of respective presences of communicants operating respective network nodes connected to the virtual area even after all network nodes have disconnected from the virtual area is maintained. A presence in the virtual area is established for a user of a Public Switched Telephone Network (PSTN) terminal device. (*See* '679 patent, Abstract) An example of a system implementing aspects and embodiments of the '679 invention is shown at FIG. 1:



FIG. 1

**ZOOM'S and WELO'S PRODUCTS AND SERVICES**

71.    Zoom has become the leading provider of video conferencing services through downloadable applications.  Zoom's market share, as reported in 2024, is over 50%:



https://www.statista.com/statistics/1331323/videoconferencing-market-share/.

72.    On information and belief, Zoom formed a partnership with Welo to offer AI augmented video conferencing as a stand-alone Welo product, by offering Welo applications from the Zoom website:[17]



73.    Welo offers online instructions to link a user's Zoom account to Welo:[18]

---

[17] https://marketplace.zoom.us/apps/TlMD8LIgS6iEEDg-MDLaMQ.
[18] https://www.youtube.com/watch?v=eWER5a_2sIY.



74.    Through its partnership with Welo, Zoom offers the Welo application for sale:



75.    The video conferencing service offered and hosted by Zoom is referred to as "Zoom Meetings."   On information and belief, Zoom offers a number of "plans" that include Zoom Meetings as a primary feature.  Zoom offers a free plan ("Zoom Basic") which provides a 40-minute time limit for meetings of 3 to 100 people.  Zoom also offers paid plans, such as "Zoom Pro," "Zoom Business," "Zoom Business Pro," and "Zoom Enterprise."  Zoom Pro eliminates the 40-minute time limit of Zoom Basic.  Zoom Business and Zoom Business Pro further allows users to host meetings that include up to 300 participants.  Zoom Enterprise allows users to host up to 500 participants in a single meeting (which can be increased to 1,000 participants with an optional

bundle), referred to as the "Zoom Large Meetings." Zoom also offers plans specifically for education.

76.     On information and belief, Zoom launched an AI-powered "Zoom Workplace" platform in early 2024. Prior to that time, the platform utilized by Zoom for providing Zoom Meetings was "Zoom One." As part of its effort to replace the Zoom One platform with the Zoom Workplace platform, Zoom will rename the plan names referred to above by including the word "workplace."

77.     Zoom Video Webinar is a platform designed to facilitate large-scale virtual events with video, audio and screen sharing, enabling up to 100 video, audio and screen sharing, enabling up to 100 panelists to broadcast to a large audience (of up to 50,000 attendees located anywhere globally) while maintaining control over interactions by restricting attendees to view and listen mode. During a webinar a presenter can momentarily promote any attendee to be a panelist so they can turn on their audio and video. The features and capabilities of Zoom Video Webinar are described in the document entitled "Zoom Video Webinar FAQ," dated July 2020, at https://explore.zoom.us/media/zoom-video-webinars-faq.pdf.

## COUNT I: INFRINGEMENT OF THE '806 PATENT

78.     Sococo incorporates by reference the allegations set forth in paragraphs 1-68 as though fully set forth herein.

79.     On information and belief, Welo makes, uses, sells, offers to sell and/or imports Welo software, applications, platforms and other means (referred herein as "virtual collaboration solutions") that infringe at least claim 1 of the '806 patent under § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing virtual collaboration solutions. Through these activities, Welo also actively induces infringement by others under § 271(b) by at least providing to the public, at a minimum, a downloadable

application, providing explicit instructions on how to set up, operate and use the Welo application through its "Welo User Guide" and other instructions on the Welo website at https://www.welo.space, in a manner that directly infringes the '806 Patent.

80.     Welo commits acts of patent infringement of the '806 patent by manufacturing, using, offering for sale, selling and/or importing at least the Welo application.

81.     Zoom commits acts of patent infringement of the '806 patent by at least using and selling the Welo application on its website at https://partner.zoom.us/solutions/welo, or by being directed to obtain the application from Zoom through the Welo website at https://www.welo.space/welo-for-zoom, or by joint infringement by combining the Zoom software and/or services with Welo software and/or services to provide a combined completed act of infringement.

82.     Claim 1 of the '806 patent recites "*a method of switching real-time data stream connections between network nodes sharing a virtual area.*"

83.     Welo's products and services include the recited method.  Welo is a Software as a Service ("SaaS") solution providing a secure online work and collaboration environment for hybrid and distributed teams of participants.  The visual interface provides the ability to see others' activity and availability at a glance, in context, making collaboration easier and more natural.  Every participant is represented by an avatar which moves around the space to interact with others.  Spaces are designated with meeting rooms, social areas, and quiet zones to support team workflow and encourage impromptu conversations and check-ins.  Welo integrates with existing platforms, including Zoom.  (See "*Welo Admin and User Guide*".[19])

84.     Claim 1 further recites "*storing a virtual area specification comprising a description of one or more switching rules each defining a respective connection between sources of a respective*

---

[19] https://docs.google.com/document/d/1AvgkQM1pIEZm6DANecBkjWT376-my8CM1qVwYcZTCOw/preview?tab=t.0#heading=h.6uv07lns608

*real-time data stream type and sinks of the real-time data stream type in terms of positions in the virtual area, wherein at least one of the one or more switching rules defines the respective connection between sources of a respective real-time data stream type and sinks of the real-time data stream type in terms of positions in relation to geometric elements of the virtual area.*"

85.     Welo's products and services include the recited method step.  The Welo system and method performs the recited step of storing a virtual area specification.  The first Welo space member causes the Welo collaboration system to store settings, configurations, and preferences in the Welo account of the first space member for his or her Welo space.  The virtual area specification is embodied as stored settings, configurations, and preferences in the Welo account of the first space member.

86.     Through the stored settings, configurations, and preferences, the virtual area specification comprises a description of one or more switching rules.  The switching rules for the Welo space include, for example, rules controlling whether during a meeting in the Welo space, a second space member can enter the Welo space or room, hear or see audio, video, or chat, access resources or files, share a screen view shared screen, and/or receive a recording of the meeting in the Welo space.

87.     Each of the switching rules for the Welo space defines a respective connection between sources of respective real-time data stream type and sinks of the real-time data stream type.  More specifically, an example of a stored switching rule for the Welo space of the Welo collaboration system is one that defines respective connections between sources in the Welo space and sinks in the Welo space.

88.     Example sources and sinks operating in the Welo space include sources such as a first microphone and a first camera of the first computer, and a second microphone and a second camera

of the second computer, of the real-time audio and real-time video stream types, respectively, and sinks such as a first speaker and a first video display screen of the first computer, and a second speaker and a second video display screen of the second computer, of the real-time audio and video stream types, respectively.

89.    In this example of a stored switching rule operating within the Welo collaboration system that defines a connection between sources and sinks, such defining operates in terms of the position of a first avatar and the position of a second avatar of the Welo space.

90.    The following portions of the "Welo Admin and User Guide" illustrate that the Welo collaboration system can monitor and detect positions and movement of avatars within the Welo space:

"How to navigate within a Welo space
"How to enter a room
"To enter a room, hover your mouse over a room and double click within the room area."



"How to leave a space
"The easiest way to leave a space is to simply close the current browser tab. You can also use the Logout menu item."

91.    Another example showing the Welo collaboration system monitoring the positions of the avatars in the Welo space is the "Find User" feature, as described in the Welo Admin and User Guide:

"Find Users"
"The Find Users button in the main menu brings up a slide-out dialog."

92.    The slide-out dialog states "Search the space roster for users:"

"The Space Roster dialog"
"This dialog displays users in your current room, users in other rooms and users who are offline."



93.     Further, the example switching rule for the Welo space of the Welo collaboration system defines whether the second space member can:

enter a room in the Welo space;

hear or see audio, video, or chat;

access resources and files;

share a screen;

view a shared screen; and/or

receive a recording of the meeting in the Welo space.

94.     Such example switching rule for the Welo space thereby operates to define the respective connection between sources of a respective real-time data stream type and sinks of the real-time data stream type.  Examples of the sources and the sinks for the first computer and the second computer include the first microphone, the first camera, the first speaker, the first video display

screen, the second microphone, the second camera, the second speaker, and the second video display screen.

95.    Such example switching rule for the Welo space further operates to define the real-time audio stream type and the real-time video stream type, respectively in terms of the position of the first avatar and the position of the second avatar in relationship to the geometric element in the Welo space.  Example geometric elements in the Welo space include the room, boundaries and walls of the room, and tables and seats within the room.

96.    In an example scenario shown in the "Welo Admin and User Guide," the creator of the space, the first space member, is a moderator for his or her Welo space.  The first space member can mute the microphones and turn off the cameras of the other members of the space attending the meeting in his or her Welo Space:

"Mute users microphone and turn off users camera"
"Space moderators can mute space member's microphone and camera."

97.    To mute the microphone, the first space member pulls down a "User Menu" and selects "Mute Microphone."  This has the effect of updating the stored "virtual area specification," with respect to this claim limitation:



98.    Therefore, the first space member can access, update, and store the virtual area specification comprising the switching rules (i.e., stored settings, configurations, and preferences) for the Welo space as recited in Claim 1.

99.     Claim 1 further recites " *establishing one or more real-time data stream connections between network nodes associated with respective objects each of which is associated with at least one of a source and a sink of one or more of the real-time data stream types, wherein the establishing is based on the one or more switching rules, the respective sources and sink associated with the objects, and respective positions of the objects in the virtual area.*"

100.    For purposes of this analysis of the claim limitation, in the Welo collaboration system, the first space member is associated with a first computer, and the second space member is associated with a second computer.

101.    In the Welo products, systems and methods, the first space member can set up his Welo space so as to establish one or more real-time audio, video, chat, and avatar-position stream connections between the first computer (used by the first space member) and the second computer (used by the second space member). The first computer and the second computer are associated with the first avatar of the first space member and the second avatar of the second space member, respectively.

102.    Each real-time data stream connection in the Welo space is associated with at least one of a source and a sink. In the Welo space, sources can include the first microphone of the first computer, the first camera of the first computer, the second microphone of the second computer, and the second camera of the second computer. Sinks can include the first video display screen of the first computer, the first speaker of the first computer, the second video display screen of the second computer, and the second speaker of the second computer.

103.    The sources and sinks can send and receive and are operable for originating and receiving real-time data stream types. The real-time data stream types can be of one or more of the following exemplary data stream types: audio, video, chat, and avatar-position stream types.

104.    The Welo collaboration system allows establishing real-time data stream connections in the Welo space to be based on (a) the switching rules, which comprise the stored settings, configurations, and preferences in the Welo account of the first space member for his or her Welo space.  Such switching rules define, for example, whether a second space member can enter a space or room, hear or see audio, video, or chat, access resources or files, share a screen, view a shared screen and/or receive a recording of the meeting, (b) the respective sources and sinks, e.g., the first microphone, the first camera, the second microphone, the second camera, and the first video display screen, the first speaker, the second video display screen, and the second speaker, which are associated with the first avatar and the second avatar, and (c) respective positions, i.e., the position of the first avatar and the position of the second avatar, in the Welo space.

105.    With reference to (a), (b) and (c) above, the Welo collaboration system is able to perform storing and updating of the recited "virtual area specification."   Specifically, the Welo collaboration system enables storing and updating the microphone and camera media settings.

From the Welo User Guide,

"User Mic and Camera Media Settings"
"On the Settings > My Settings dialog, there is now a Media tab that allows configuration of how the microphone and camera will behave when the user enters a new room (from a double click, Join me request, or Knock acceptance)."
"NOTE: The mic and cam automatically turn off after a person is in a room for a minute if no one else is present in the room."

106.    The slide-out dialog states "Search the space roster for users:

"The Space Roster dialog"
"This dialog displays users in your current room, users in other rooms and users who are offline."

107.    Welo space uses a switching rule and operates to define the respective connection between sources of a respective real-time data stream type and sinks of the real-time data stream type. Examples of the sources and the sinks for the first computer and the second computer include the first microphone, the first camera, the first speaker, the first video display screen, the second

27

microphone, the second camera, the second speaker, and the second video display screen.

108.    Such example switching rule for the Welo space further operates to define the real-time audio stream type and the real-time video stream type, respectively, in terms of:

the position of the first avatar and the position of the second avatar in relation to geometric elements in the Welo space.  Example geometric elements in the Welo space include:  the room, boundaries and walls of the room, and tables and seats within the room.

109.    In an example scenario shown on page 31 of the Welo User Guide, where the creator of the space, the first space member, is a moderator for his Welo space.  The first space member can mute the microphones and turn off the cameras of other members of the space attending the meeting in his Welo space:

"Mute users microphone and turn off users camera"
"Space moderators can mute space member's microphone and camera."

110.    For Welo's system and methods, to mute the microphone, the first space member pulls down a "User Menu" and selects "Mute Microphone".  This has the effect of updating the stored "virtual area specification:"



111.    Therefore, the first space member can access, update, and store the virtual area specification comprising the switching rules (i.e., stored settings, configurations, and preferences) for the Welo space as recited in claim 1 of the '806 patent.

112.    In the Welo systems and methods, the first space member can set up his or her Welo space so as to establish one or more real-time audio, video, chat, and avatar-position stream connections between the first computer (used by the first space member) and the second computer (used by the second space member). The first computer and the second computer are associated with the first avatar of the first space member and the second avatar of the second space member, respectively.

113.    Each real-time data stream connection in the Welo space is associated with at least one of a source and a sink. In the Welo space, sources can include, among others, the first microphone of the first computer, the first camera of the first computer, the second microphone of the second computer, and the second camera of the second computer. In Welo, Sinks can include among others, the first video display screen of the first computer, the first speaker of the first computer, the second video display screen of the second computer, and the second speaker of the second computer.

114.    Welo's sources and sinks can send and receive, and are operable for originating and receiving, real-time data stream types. The real-time data stream types can be of one or more of the following exemplary data stream types: audio, video, chat, and avatar-position stream types.

115.    On information and belief, establishing real-time data stream connections in the Welo space is based on:

(a) the switching rules, which comprise the stored settings, configurations, and preferences in the Welo account of the first space member for his Welo space. Such switching rules define, for example, whether a second space member can enter a space or room; hear or see audio, video, or chat; access resources or files; share a screen; view a shared screen; and/or receive a recording of the meeting;

(b) the respective sources and sinks: e.g., the first microphone, the first camera, the second

microphone, the second camera, and the first video display screen, the first speaker, the second video display screen, and the second speaker, which are associated with the first avatar and the second avatar; and

(c) respective positions, i.e., the position of the first avatar and the position of the second avatar, in the Welo space.

116.    Regarding (a), (b), and (c) above, the Welo collaboration system can perform storing and updating of the recited "virtual area specification".  Specifically, the Welo collaboration system enables storing and updating the microphone and camera media settings.

117.    With reference to the Figure below, from the Welo User Guide, the first space member can adjust or maintain his microphone and camera settings, and select to maintain the state of his microphone and camera when switching rooms for when he or she moves to a new room in the Welo space:



118.    The Welo collaboration system is designed to work with, and can be integrated with, the Zoom platform.  The Welo collaboration system can establish a connection between the first space member and the second space member using Welo's integrated Zoom functionality.

119.    A Welo space member can sign up with a Zoom account to integrate Zoom's audio, video and screen sharing features, as well as features like recording and transcription.  The Welo

application is available in the Zoom App Marketplace.

120.   Zoom instructs users how to integrate Welo with the Zoom platform at the Zoom App

Market Place:

"Overview"
"Whether you gather people for regular meetings or are leading a one-time event, Welo's visual spaces recreate the look, feel, and flow of working together in-person. With streamlined access to people and information, Welo users report stronger connections to their colleagues and the context they need to thrive."
"Now, with a paid Zoom One Pro, Business or Business Plus subscription, you get access to Welo premium features and more with Zoom Essential Apps. Terms apply. Gain premium features with exclusive space layouts, the ability to save multiple spaces, and live chat support."
"It's like you're in person, or better."
"Recreate the experience of working together in a physical space–where it's easy and natural to interact with colleagues and access information–right within Zoom." (Document D, page 1)

121.   As shown in "Virtual Spaces That Feel Like Real Places", users are instructed how to

integrate Welo with Zoom:

"Fully integrated with Zoom
"Simplify your tool set with the seamless integration of Zoom's audio, video, and features such as recording and transcription for the best of both worlds.
✓ Crystal-clear audio, video, and screen share
✓ Zoom's robust security features and encryption
✓ Extensive support for various devices and platforms" (Document E, page 4)



122.   The first space member can connect or integrate his Zoom account into the Welo

collaboration system.  One way to integrate a Zoom account with the Welo collaboration system

is to locate the Welo Virtual Office app in the Zoom Marketplace, then click "Add", then click "Allow" on the Zoom authentication page.

123.    After integrating a Zoom account into Welo, the first space member can invite a second space member to a Zoom meeting.  He or she can start meetings ("calls") in Welo space to have the benefit of the enhanced collaboration of the Welo space.

124.    To start Zoom calls in the Welo space, the first space member clicks "Start Call" when ready to start a meeting or conversation.  The Zoom authentication page will open in the first space member's browser.  He or she clicks "Allow" to enable Welo and Zoom to work together.

125.    During the Zoom call in the Welo space, the "Zoom Meeting" screen is visably integrated with the "Welo" screen as shown in the Figure below from "Welo for Zoom Overview:"



126.    The Welo collaboration system can monitor the positions of avatars in the Welo space. The following portions of the Welo User Guide demonstrate that the Welo collaboration system can monitor and detect positions and movement of avatars within the Welo space:

"How to navigate within a Welo space
"How to enter a room
"To enter a room, hover your mouse over a room and double click within the room area."



127.    Another example showing monitoring the positions of avatars in the Welo space is the "Find User" feature, as described in the Welo User Guide:

"Find Users"
"The Find Users button in the main menu brings up a slide-out dialog."



128.    The slide-out dialog in the Figure above states "Search the space roster for users".

"The Space Roster dialog"
"This dialog displays users in your current room, users in other rooms and users who are offline."

129.    The Welo collaboration system monitors the positions of avatars within the Welo space whether using its standalone application or integrated with the Zoom application.

130.    Each limitation of claim 1 of the '806 patent is found in the Welo application alone or alternatively in the combined applications of Zoom and Welo.

131.    Zoom offers for sale the Welo application either as a standalone application or an integration application which integrates into the Zoom application.  In either case, both Zoom and Welo infringe claim 1 of the '806 application.

132.    Zoom and Welo are both individual and joint infringers of at least claim 1 of the '806 patent, directly and indirectly.

133.    Zoom and Welo, individually and jointly, have, under 35 U.S.C. §271(a) directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, at least claim 1 of the '806 patent, by making, using, testing, selling, offering for sale and/or importing into the United States infringing systems and methods embodied in the Zoom and Welo applications.

134.    Zoom and Welo also indirectly infringe the '806 patent by actively inducing the direct infringement by third parties under 35 U.S.C. §271(b).

135.    Zoom and Welo have knowingly (since at least the date of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least claim 1 of the '806 patent (such as their customers in this District and throughout the United States.

136.    On information and belief, Welo has knowingly and intentionally directly and indirectly infringed since at least as early as 2015 through Welo CEO's knowledge of Sococo's patent portfolio and strategy through his prior position as CEO of Sococo.

137.    On information and belief, Zoom has knowingly and intentionally directly and indirectly infringed since at least as early a time when Zoom Ventures made an investment in Welo, Zoom. The time is unknown at present but is before the filing of this Complaint and would have coincided with due diligence undertaken to make the investment in Welo.

138.    Zoom and Welo continue to induce infringement of the '806 patent.

139.    Zoom and Welo have contributorily infringed and are contributory infringers because, with knowledge of the '806 patent (since at least the date of this Complaint), they supply a material part of a claimed combination, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use.

140.    Zoom and Welo contribute to their customers' infringement because, with knowledge of the '806 patent, Zoom and Welo supply the technology that allows their customers to infringe the '806 patent.

141.    Zoom and Welo have knowledge that their activities concerning their video conferencing applications infringe one or more claims of the '806 patent.

142.    Zoom and Welo's customers, such as consumers or end users, have infringed claims of the '806 patent by using the Zoom and Welo video conferencing applications in a manner proscribed by Zoom and Welo, and as such, Defendants' customers are direct infringers.

143.    On information and belief, Zoom and Welo will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Instrumentalities (which are accts of direct infringement of the '806 patent) and Defendants have and will continue to encourage those acts with the specific intent to infringe one or more claims of the '806 patent.

144.    Zoom and Welo provide information and technical support to their customers, including promotional materials, product manuals, brochures, video, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Zoom and Welo's video conferencing applications (which are acts of infringement of the '806 patent).

145.    Alternatively, Zoom and Welo know and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Zoom and Welo video conferencing applications constitutes direct infringement of the '806 patent.

146.    On information and belief, Zoom and Welo's infringement of the '806 patent has been willful, and merits increased damages.

147.    On information and belief, Zoom and Welo have known that their activities concerning their video conferencing applications infringed one or more claims of the '806 patent since at least

the date of this Complaint.

148.    On information and belief, Zoom and Welo have made no attempt to design around claims of the '806 patent.

149.    On information and belief, Zoom and Welo did not have a reasonable basis for believing that the claims of the '806 patent are invalid.

150.    On information and belief, Zoom and Welo's video conferencing applications are available to businesses and individuals throughout the United States, including in this District.

151.    Sococo has been damaged as the result of Zoom and Welo's willful infringement.  Upon information and belief, Zoom and Welo will continue to infringe one or more claims of the '806 patent unless and until they are enjoined by this Court.

152.    Zoom and Welo have caused and will continue to cause Sococo irreparable injury and damage by infringing one or more claims of the '806 patent.  Sococo will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Zoom and Welo are enjoined from infringing the claims of the '806 patent.

153.    While details of Zoom and Welo's infringement is provided in the foregoing enumerated paragraphs, Sococo reserves its right to provide greater detail and scope via its Preliminary and Final Infringement Contentions at the time required under this Court's scheduling order and local rules.

## COUNT II – INFRINGEMENT OF THE '595 PATENT

154.    Sococo incorporates by reference the allegations set forth in paragraphs 1-153 as though fully set forth herein.

155.    On information and belief, the use of Welo's systems and services and any apparatus and service used therewith (collectively the "Welo Accused Product and Services") meets all the claim

limitations of at least Claim 1 of the '595 patent.

156.    On information and belief, Welo makes, uses, sells, offers to sell and/or imports Welo software, applications, platforms and other means, referred to as "virtual collaboration solutions," that infringe at least claim 1 of the '595 patent under § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing virtual collaboration solutions.

157.    Through these activities, Zoom also actively induces infringement by others under § 271(b) by at least providing to the public, at a minimum, a downloadable application, providing explicit instructions on how to set up, operate and use the Welo application through its "Welo User Guide" and other instructions on the Welo website at https://www.welo.space, in a manner that directly infringes the '595 Patent.

158.    Welo commits acts of patent infringement by manufacturing, using, offering for sale, selling and/or importing at least the Welo application.

159.    Zoom commits acts of patent infringement by at least using and selling the Welo application on its website, https://partner.zoom.us/solutions/welo, or by joint infringement by combining the Zoom software and/or services with Welo software and/or services to provide a combined completed act of infringement.

160.    Claim 1 of the '595 patent calls for a method in a network communications environment supporting realtime communications between a user and other communicants operating respective network nodes.

161.    The Welo collaboration system provides a user with an indication of presence of other communicants in a network communications environment.

162.    Claim 1 of the '595 patent includes the step of *determining each of one or more of the other communicants in the network communications environment who has a social network tie with the user that satisfies a particular relationship predicate and who* is determining each of one or more of the other communicants in the network communications environment who has a social network tie with the user that satisfies a particular relationship predicate and who is present in a zone of a respective other virtual area that is assigned to the other communicant.

163.    Welo's collaboration system operates in the same way as stated above.  A user, associated with a user computer, creates a user Welo space in a company organization's enterprise network(s). Another communicant, associated with another computer, creates another Welo space in the company organization's enterprise network(s).  The user is a member of the other Welo space.  The other Welo space is established under governance rules.  The governance rules define who are members of the other Welo space and what such members can do. [20]

164.    The Welo collaboration system includes one or more virtual areas, which are referred to as "Welo spaces".  Each Welo space includes one or more zones, which are referred to as "rooms". Each Welo space is created by a respective user or other communicant.

165.    According to Welo's website and User Manual, the user creates the user Welo space, and the other communicant creates the other Welo space.  The other Welo space includes a room.  The user Welo space is assigned to the user.   The other Welo space is assigned to the other communicant.

166.    The Welo Admin and User Guide illustrates in the Figure below a Welo space on page 5. Within the Welo space shown on page 5 are geometric elements such as: several rooms, boundaries

---

[20] "Each Welo space has one or more rooms." ("Welo Admin and User Guide", Document 4, page 11)

and walls of rooms, tables, and chairs. Additionally, page 5 shows several avatars which are associated with members of the respective Welo space. The illustrated avatars are positioned in several rooms of the respective Welo space:



167.    While a single Welo space is illustrated in the Uswer Guide, the Welo collaboration system allows and supports multiple Welo spaces within installations on enterprise networks. As shown in the User Guide at pages 6-10 and 21-22, the user and other communicants of the Welo collaboration system can: create an initial Welo space on the company enterprise network, add additional Welo spaces, and delete previously created Welo spaces.

168.    Further, as shown on the document entitled "Welo Pricing" the Welo pricing schedule reflects the capability of having multiple Welo spaces in the Welo collaboration system installed at a company or organization. Referring to page 1 of "Welo Pricing," both the "Team" plan and the "Enterprise" plan support multiple Welo spaces. The "Enterprise" plan charges a higher licensing fee than the "Team" or "Free" plans, and has the capability to create unlimited Welo spaces ("Unlimited saved spaces") within the Welo collaboration system as shown below:



169.    A room of a Welo space is shown in the Welo Admin and User Guide on page 24.  The example room has geometric elements such as walls, furniture, a table, and seats.  An avatar object ("avatar") of a member of the space is shown at the table in the room:



170.    With respect to the '595 claim limitation, the other communicant has a social network tie (that satisfies a particular relationship predicate) with the user because like the user, the other

communicant is a member of the other Welo space.  The particular relationship predicate is that both the user and the other communicant are members of the other Welo space:

"How to navigate within a Welo space"

"How to enter a room"

"To enter a room, hover your mouse over a room and double click within the room area."



(Figure from The Welo User Guide, page 24)

"How to leave a space"

"The easiest way to leave a space is to simply close the current browser tab. You can also use the Logout menu item." (Welo User Guide, page 24)

171.    Claim 1 of the '595 patent further requires *transmitting to the network node operated by the user a respective indication of presence of each of the determined other communicants in each of the one or more zones of the respective other virtual areas.*

172.    "Presence" refers to the ability and willingness of a networked entity (e.g., a communicant, service, or device) to communicate, where such willingness affects the ability to detect and obtain information about the state of the entity on a network and the ability to connect to the entity. ('595 at Col. 4, lines 25-29.)

173.    With respect to the transmitting limitation, in Welo, the user is associated with the user computer.  The other communicant is associated with the other computer.

174.    Each of the user and the other communicants create respective Welo spaces.  Each Welo space establishes one or more realtime audio, video, chat, and avatar-position stream connections between network nodes associated with respective members of the respective Welo space.  The user computer and the other computer are network nodes associated with the user avatar of the user and the other avatar of the other communicant, respectively.

175.    The Welo collaboration system determines the respective positions of the user avatar and the position of the other avatars with respect to the other Welo space.

176.    The Welo collaboration system can perform storing and updating of the governance rules and particular relationship predicates for the other Welo Space.  As an example of this Welo feature, the Welo collaboration system enables storing and updating of the microphone and camera media settings.

177.    Welo's collaboration system meets the "transmitting" limitation of claim 1 of the '595 patent.  The Welo User Guide illustrates the "indication of presence" recited in claim 1.  In the list in the "Space Roster" shown in the User Guide, the names and "presence of each of the determined other communicants" within the room of the other Welo space are transmitted "to the network node operated by the user" as recited in the "transmitting" claim limitation.

178.    Welo and Zoom invite customers and instruct users how to combine the Welo and Zoom platforms to enhance the Zoom video conference experience with AI enhancements provided by the Welo application.  When customers do so, Welo and Zoom are joint infringers of the '595 patent.

179.    Without combining their platforms, Welo infringes the '595 patent as a standalone platform offered for sale on the Welo website.

180.    Zoom, alone, infringes the '595 patent by offering the Welo platform for sale on the Zoom website.

181.    Zoom and Welo are direct infringers of the '595 patent by at least using the Welo platform and integrating the Welo platform into the Zoom platform through testing, debugging and integrating the two platforms to work seamlessly.

182.    Zoom and Welo are indirect infringers of the '595 patent by knowlingly (since at least the date of this Complaint) and intentionally actively aiding, abetting and inducing others to directly infringe at least claim 1 of the '595 patent.

183.    Zoom and Welo list on their websites an instruction and step-by-step guide to end users explaining how to utilize the Welo and Zoom software using, among other things, the Welo User Guide and Zoom links to the Welo User Guide, as well as Zoom's instructions on how to integrate the Welo application into Zoom applications.

184.    Defendants have knowingly (since at least the date of this Complaint) and intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '595 patent (such as its customers in this District and throughout the United States).

185.    Defendants have been actively aware of the existence of the subject matter of the '595 patent as well as the other patents-in-suit, through the hiring of former Sococo employees, two of whom became founders of Welo.  Through Zoom Ventures, Zoom must have been aware through due diligence of the connection between the Welo employees and Sococo and the extensive patent portfolio awarded to Sococo for its inventions in the AI augmented conferencing space.

186.    On information and belief, from these prior associations, Defendants were aware of the subject matter and disclosures of the '595 patent at least six years prior to the filing of this Complaint.

187.    Defendants have, under 35 U.S.C. §271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '595 patent, by making, using, testing, selling, offering for sale and/or importing into the United States infringing video conferencing software as describe above.

188.    Defendants also indirectly infringe the '595 patent by actively inducing the direct infringement by third parties under 35 U.S.C. §271(b).

189.    Defendants continue to induce infringement of the '595 patent.

190.    Defendants have contributorily infringed and are contributory infringers because, with knowledge of the '595 patent (since at least the filing date of the Complaint), they supply a material part of a claimed combination, where the material part is not a stable article of commerce, and is incapable of substantial noninfringing use.

191.    Defendants contribute to their customers' infringement because, with knowledge of the '595 patent, Defendants supply the technology that allows their customers to infringe the '595 patent.

192.    Defendants have knowledge that their activities concerning their AI augmented video conferencing software infringe one or more claims of the '595 patent.

193.    Defendants' customers, such as consumers or end users, have infringed claims of the '595 patent by using the Welo and Zoom conferencing software in a manner proscribed by Defendants, and as such, Defendants' customers are direct infringers.

194.    On information and belief, Zoom and Welo will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Instrumentalities (which are accts of direct infringement of the '595 patent) and Defendants have and will continue to encourage those acts with the specific intent to infringe one or more claims of the '595 patent.

195.   Zoom and Welo provide information and technical support to their customers, including promotional materials, product manuals, brochures, video, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Zoom and Welo's video conferencing applications (which are acts of infringement of the '595 patent).

196.   Alternatively, Zoom and Welo know and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Zoom and Welo video conferencing applications constitutes direct infringement of the '595 patent.

197.   On information and belief, Zoom and Welo's infringement of the '595 patent has been willful, and merits increased damages.

198.   On information and belief, Zoom and Welo have known that their activities concerning their video conferencing applications infringed one or more claims of the '595 patent since at least the date of this Complaint.

199.   On information and belief, Zoom and Welo have made no attempt to design around claims of the '595 patent.

200.   On information and belief, Zoom and Welo do not have a reasonable basis for believing that the claims of the '595 patent are invalid.

201.   On information and belief, Zoom and Welo's video conferencing applications are available to businesses and individuals throughout the United States, including in this District.

202.   Sococo has been damaged as the result of Zoom and Welo's willful infringement.  Upon information and belief, Zoom and Welo will continue to infringe one or more claims of the '595 patent unless and until they are enjoined by this Court.

203.   Zoom and Welo have caused and will continue to cause Sococo irreparable injury and damage by infringing one or more claims of the '595 patent.  Sococo will suffer further irreparable

injury, for which it has no adequate remedy at law, unless and until Zoom and Welo are enjoined from infringing the claims of the '595 patent.

204.    While details of Zoom and Welo's infringement of the '595 patent are provided in the foregoing enumerated paragraphs, Sococo reserves its right to provide greater detail and scope via its Preliminary and Final Infringement Contentions at the time required under this Court's scheduling order and local rules.

## COUNT III – INFRINGEMENT OF THE '851 PATENT

205.    Sococo incorporates by reference the allegations set forth in paragraphs 1-204 as though fully set forth herein.

206.    On information and belief, the use of Welo's systems and services and any apparatus and service used therewith (collectively the "Welo Accused Product and Services") meets all the claim limitations of at least Claim 1 of the '851 patent.

207.    On information and belief, Welo makes, uses, sells, offers to sell and/or imports Welo software, applications, platforms and other means, referred to as "virtual collaboration solutions," that infringe at least claim 1 of the '851 patent under § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing virtual collaboration solutions.

208.    Through these activities, Zoom also actively induces infringement by others under § 271(b) by at least providing to the public, at a minimum, a downloadable application, providing explicit instructions on how to set up, operate and use the Welo application through its website https://www.zoom.com which provide links to the Welo website and the "Welo User Guide" and other instructions on the Zoom website in a manner that directly infringes the '851 Patent. Zoom also sells or makes available links to the public to the Welo website on the Zoom website.

209.    Welo and Zoom commit acts of patent infringement by manufacturing, using, offering for sale, selling and/or importing at least the Welo application; Welo and Zoom jointly infringe by combining aspects of their platforms for video conferencing to produce an AI augmented conference for users of the Welo application.

210.    Zoom commits acts of patent infringement by at least using and selling the Welo application on its website, https://partner.zoom.us/solutions/welo, or by joint infringement by combining the Zoom software and/or services with Welo software and/or services to provide a combined completed act of infringement.

211.    Claim 1 of the '851 patent describes "a method performed by a client network node executing a client application integrating web browsing and network data stream processing for realtime communications. (Ex. C. '851 Patent, Col. 25 at 34-36.)

212.    Welo and Zoom provide the same method.   A Welo collaboration system can be implemented on a network for an organization's users.  The network includes a network of client network nodes (client computers).  A first user's client network node and the second user's client network node are coupled to the network.  The Welo collaboration system includes at least one Welo Space created by the first user, which includes at least one room.

213.    On information and belief, with Welo, the first user associated with the first client network node and the second user associated with the second client network node can engage in a realtime communications session.  Respective client applications integrating web browsing and network data stream processing operate on the first and second client network nodes, respectively.  A guest user associated with a guest network node can be invited to join the realtime communications session through a web browsing application.

214.    Claim 1 of the '851 patent requires a method step of "on a display, displaying a graphical user interface providing a single point of control for real-time communications and web browsing interactions, wherein the displaying comprises displaying in the graphical user interface at least one control for establishing a presence in a virtual area.  Welo employs the same step. (*Id*., Col. 25 at 38-43.)

215.    The Welo collaboration system provides a virtual meeting environment and a graphical user interface for audio/video conferencing and real-time collaboration.  The Welo collaboration system provides users remote access to a virtual area via respective client network nodes such as laptops, desktops, mobile devices, etc. See FIG. A below, "With Welo you can facilitate coaching group workshops:"[21]



216.    FIGS. B and C below show a display presented by the client application executing on the client network node associated with the first user.  The Welo collaboration system provides the virtual area ("the Welo space") for exchanging peer-to-peer real-time data streams through which

---

[21]  "Welo - The new way to work (with captions)" https://vimeo.com/showcase/8440739

users can visualize the virtual area with visual representations (avatars) of other users who are also present in the virtual area. The Welo collaboration system enables its users to establish their presence at desired virtual areas and communicate via chat and audio/video conferencing with co-workers or space members present in the same virtual area. See FIG. B below, "In Welo you can look around and see who is available:"[22]



217.    As seen in FIG. 3 below, the virtual area (the Welo space) can include a "Visitor Center:"[23]

---

[22] "Welo - The new way to work (with captions)" https://vimeo.com/showcase/8440739

[23] "Maro Sola's Introduction to Welo with Cliff Pollan (Full Version)"
https://www.youtube.com/watch?v=ZeVe4q1SXjw



218.    Avatars can be positioned and moved within a room in the Welo space using a mouse or other input device associated with a computer.    Each respective real-time communications application monitors and detects the navigation and position of respective avatars within the room in the Welo space.

219.    The client application executing on the client network node provides a graphical user interface (GUI) on the display that is a single point of control for real-time communications and web browsing interactions occurring within the Welo space (virtual area).

220.    As shown in FIGS. B and C above, the client application executing on the first client network node presents a graphical user interface (GUI) that shows an integrated view of web browsing and network data stream processing.    The GUI provides a single point of control for real-time communications and web browsing interactions.

221.    On information and belief, the Welo GUI includes a control for establishing a presence in the virtual area (Welo space).    By way of Welo's "Guest Link" feature, the Welo GUI provides the control for establishing presence of the guest user within the virtual area (the Welo space).    Using the Welo "Guest Link" feature, the first client network node associated with the first user can send a link to a guest user.

222.    Using the web browsing application, the guest user can click on the link and utilize the web browsing application to establish real-time communications with the client application operating on the first client network node.  The Welo "Guest Link" feature satisfies the recited "at least one control for establishing a presence in a virtual area".

223.    Realtime communications occur between the client application operating on the first client network node and the web browsing application operating on the guest network node associated with a guest user.

224.    The single point of control provided by the Welo GUI enables the first user to have visibility into the client application operating on the first user client network node and the web browsing application operating on the guest network node.  The client application includes functionality for exchanging peer-to-peer real-time data streams (e.g., audio, video, text, chat, etc.) between the first user and the guest user.

225.    The control on the Welo GUI for establishing presence includes visual representations ("avatars") that are associated with users moving within the Welo space (virtual area).  This control allows the first user to see a visual representation (avatar) of the guest user with whom he is communicating via network data streams in a real-time communications session.  The GUI provides a single point of control for managing real-time communications and processing network data streams between the first user and the guest user.

226.    The Welo GUI includes a control for establishing a presence in the virtual area (Welo space).  By way of Welo's "Guest Link" feature, the Welo GUI provides the control for establishing presence of the guest user within the virtual area (the Welo space).  Using the Welo "Guest Link" feature, the first client network node associated with the first user can send a link to a guest user.

227.    Using the web browsing application, the guest user can click on the link and utilize the web browsing application to establish real-time communications with the client application operating on the first client network node.  The Welo "Guest Link" feature satisfies the recited "at least one control for establishing a presence in a virtual area."

228.    Realtime communications occur between the client application operating on the first client network node and the web browsing application operating on the guest network node associated with a guest user.

229.    The single point of control provided by the Welo GUI enables the first user to have visibility into the client application operating on the first user client network node and the web browsing application operating on the guest network node.  The client application includes functionality for exchanging peer-to-peer real-time data streams (e.g., audio, video, text, chat, etc.) between the first user and the guest user.

230.    The control on the Welo GUI for establishing presence includes visual representations ("avatars") that are associated with users moving within the Welo space (virtual area).  This control allows the first user to see a visual representation (avatar) of the guest user with whom he is communicating via network data streams in a real-time communications session.  The GUI provides a single point of control for managing real-time communications and processing network data streams between the first user and the guest user.

231.    Claim 1 of the '851 patent also includes the step "requesting a presence in a particular virtual area identified in connection with the control and establishing a real-time communication session with at least one other client network node that is present in the particular virtual area." Welo uses the same method step. (*Id*., Col. 25 at 44-48.)

232.    The client application executing and operating on the first user's client network node provides the first user the ability to move his avatar into a room within the particular virtual area (the Welo space).  The client application includes a control for establishing a presence in the virtual area (Welo space).  The client application operating on the first user's client network node provides as the control the ability to invite a guest user into the room within the Welo space.

233.    The first user uses the Welo "Guest Link" feature to invite the guest user to a meeting in a room of the Welo space, which functions as the control for requesting a presence in a particular virtual area (the Welo space) and establishing a real-time communication session with the guest user's guest network node that is present in the particular virtual area (the Welo space).

234.    Utilizing the client application operating on the first client network node, the first user can ask the guest user to join him in a room of the Welo space as shown on page numbered "40" of the Welo Admin and User Guide ("Welo User Guide).  According to the Welo User Guide, the following instructions guide users how to engage the platform:

"Ask someone to join you"

"To ask someone in another room to join you in the room in which you're located, do the following:

1. Hover your mouse over their avatar.

2. Right-click and choose **Ask <name> to Join** from the context menu."

These instructions are illustrated in the following graphic from the Welo User Guide:



235.    With Welo, the web browsing application executing and operating on the guest network node generates for the guest user the pop-up message below (from the Welo User Guide):



236.    The first user operating his respective client application can generate a guest link that can be shared with any guest user to join the virtual area (the Welo space).

237.    With reference to FIG. D below from the Welo User Guide:

"Welo guests"

"Members can use the Guest Link menu item to obtain a link to share with someone who is not a member of the current Welo space. "

"Guests have limited privileges within the space, such as not being able to change the label of a Welo room."

"Note that a guest link is space specific."



*Guest Link screen*

238.    With Welo, when the guest user clicks the link using his web browsing application, a presence for the guest user is established in a respective location in the virtual area (the Welo space), which meets the limitation in the claim.

239.    As moderator of the Welo space, the first user can designate a room of the Welo space to be a reception area for guest user: "Use this room (4 seats) as the guest reception area.", as illustrated in FIG. E below from the Welo User Guide:



240.    FIG. F below illustrates that the Welo GUI provides a single point of control for real-time communications and web browsing interaction with "at least one other client network node that is present in the particular virtual area" as recited in the claim.[24]



241.    With Welo, the client application operates on the first user's client network node, and the web browsing application operates on the guest network node. The client application provides a real-time framework on the Welo GUI that displays a spatial visualization of the workspace (i.e., virtual area) which consists of one or more rooms. Each participant (first user, second user, guest user, etc.) in the virtual area (Welo space) is represented by an avatar.

242.    When the first user logs into a Welo space, presence can be established in a particular room by double-clicking on the desired room as shown in FIG. G below:

---

[24] "Maro Sola's Introduction to Welo with Cliff Pollan (Full Version)" at
https://www.youtube.com/watch?v=ZeVe4q1SXw



243.    The Welo collaboration system determines and establishes a presence of each user with their avatar being located at respective locations in the virtual area (Welo space) as recited in the claim, and shown in FIG. H.[25] and FIG. I[26] below:



---

[25] "Welcome to Welo demo space"
https://www.youtube.com/watch?v=I2w1fpssVgY
[26] Presence of a user in a room represented by an avatar
Source: product testing



FIGS. H & I

244.    As can be seen in FIG. J below, the respective avatars of the first user and the guest user are depicted with symbols that indicate status and capabilities of the network nodes, which function as visual clues such that users within the virtual area and viewing the virtual area through the Welo GUI can know whether a particular user is present, available for collaboration, has permissions to use communications technology, has microphone, camera or video turned on, etc.  As seen in FIG. J, for example, a guest avatar of the guest user is visually denoted by the letter "G" and has a blue color, while presenting a visual cue that indicates microphone capability:[27]

---

[27] Guest Communication Session Source: product testing



FIG. J

245.    As shown in FIG. K below, two avatars of users are shown in a room, "now once that person joins you you're probably going to want to talk to them".  Each avatar presents a visual cue related to microphone capability:[28]



FIG. K

---

[28] "Quickstart Guide to Welo, Featuring the Zoom Integration"
https://www.youtube.com/watch?v=_mJQ-3nPsQg

246.    The web browsing application executing and operating on the guest network node enables the guest user to communicate in real-time with the other users present in the virtual space. FIG. L shows examples of chatting and screen sharing in real-time. Referring to FIG. L, in the lower right corner can be seen that the guest user can use chat functionality to message the communications session saying, "Hello thank you for inviting me". In the upper portion, a screen presenting textual content is being shared with the guest user through screen sharing functionality:[29]



FIG. L

247.    FIGS. I, J, and K above clearly show that the Welo GUI includes "a single point of control for real-time communications and web browsing interactions" and "at least one control for establishing a presence in a virtual area" as recited in the claim.

248.    Further, the Welo GUI displayed by the client application operating on the first user's client network node enables the first user to see an avatar of, and communicate with, the guest user via operation of the web browsing application operating on the guest network node.

249.    Claim 1 of the '851 patent further requires the step of " transmitting outgoing data streams to and receiving incoming data streams from one or more other network nodes over respective

---

[29] Guest Communication Session Real-Time Data
Source: product testing

network links via the real-time communications and web browsing interactions, the incoming and outgoing data streams comprising one or more time-critical types of data streams and one or more non-time-critical types of data streams, wherein the transmitting and receiving comprise, by the client network node, transmitting and receiving one or more time-critical types of data streams with each at least one other client network node and executing the client application to interface the client network node with network protocols on the client network node." (*Id.*, Col. 25 at 49-61.) Welo products and services perform this step.

250. With Welo, the first client network node is associated with the first user. The guest network node is associated with the guest user. The client application operating on the first user's client network node presents a graphical user interface (GUI) for the Welo space (virtual area). The client application operates on the first network node and the web browsing application operates on the guest network node.

251. The respective client application executes on the first client network node in to interface the client network node with network protocols on the client network node, as recited in the claim. The "network protocols" define the respective connection between sources of a respective real-time data stream type and sinks of the real-time data stream type.

252. Examples of the sources and the sinks for the first client network node and the guest network node include: the first microphone, the first camera, the first speaker, the first video display screen, the guest microphone, the guest camera, the guest speaker, and the guest video display screen.

253. Executing the client application on the first client network node operates to define on the client network node and guest network node the real-time audio stream type and the real-time video stream type, respectively, in terms of the respective positions of the first avatar and the guest

avatar in relation to geometric elements in the Welo space, such as a room, boundaries and walls of the room, and tables and seats within the room.

254.    In the Welo space, each of the respective users (e.g., first user or guest user) is indicated by a visual representation (an avatar).  The first user is represented by the first avatar, and the guest user is represented by the guest avatar.  The client application executing on the first client network node manages real-time communication sessions between the first user and the guest user based on the determined locations of their respective avatars in the Welo space (virtual area).

255.    In the Welo collaboration system, the first client network node transmits outgoing data streams to, and receives incoming data streams from, one or more other network nodes over respective network links via the real-time communications and web browsing interactions, as recited in the claim.  Specifically, the first client network node transmits outgoing data streams to, and receives incoming data streams from, the guest network node.

256.    This is an example of the recited "real-time communications and web browsing interactions".  As recited in Claim 1, the Welo collaboration system supports transmitting and receiving incoming and outgoing data streams comprising one or more time-critical types of data streams and one or more non-time-critical types of data streams.

257.    In the Welo collaboration system, for example, the one or more *time-critical* types of data streams can be real-time video data streams, and the one or more *non-time-critical* types of data streams can be chat or text data streams.

258.    In the Welo collaboration system, the client application executing on the first client network node presents the Welo GUI on the display and operates to define the respective connection between sources of a respective real-time data stream type and sinks of the real-time data stream type for the Welo space through network protocols.  Execution of the client application on the

client network node enables the first user to configure the Welo GUI settings and interfaces the client network node with network protocols on the client network node.

259.    As seen in Fig. M below, "where your guests can pop the link in their browser and instantly join you".  As depicted in FIG. M below,[30] to utilize the "Guest Link" feature, the first client communicant uses a pointer element to select "People" from the left-side vertical menu bar, then selects "Invite", and then selects "Guest Link:"



260.    As discussed above, the first client communicant can invite the guest user to join him in a particular room of the Welo space using his respective client application, as shown on page numbered "40" of the Welo User Guide.

---

[30]"Accessing the Guest Link via Browser"

Source: "Quickstart Guide to Welo, Featuring the Zoom Integration"
https://www.youtube.com/watch?v=_mJQ-3nPsQg

261.    When the first client communicant right-clicks over the guest avatar, a "User Menu" is displayed.  On the "User Menu", the first client communicant can select the option "Ask GUEST to Join:"



262.    A Welo Space Moderator or Welo Organization Administrator can configure a Welo room ("a visual area") to be a reception area for the guest communicant.  As shown in FIG. N below, the first user, who is moderator of the Welo space, uses a pointer element to check a "Guest reception area" box (shown to the left of the pointer element) to select a room of the visual area (the Welo space) as the reception area for guests:



**Welo rooms**

Each Welo space has one or more rooms.

Each Welo room:

- Has a maximum seating/standing capacity that governs how many members can be in it at any given time
- The maximum number of people that can be designed into a Welo is 250 people, but most rooms are designed and limited to hold a specific number such as 12
- Represents a distinct "audio zone", where only members within the room can hear each other

To configure a Welo room, a Welo Space Moderator or Welo Organization Administrator can configure the room settings by right-clicking within the room and choosing **Change Room Settings** from the context menu.

*Change Room Settings screen*

FIG. N

263.    As shown in FIGS. O and P below, on information and belief, when the guest user receives and clicks on the link that was transmitted to the guest network node when the first user clicked on the "Guest Link" option, the web browsing application interfaces the guest user with the real-time communications session in the Welo space (virtual area). Referring to FIG. O, the guest user joining the real-time communications session in the virtual area (the Welo space) is prompted with one or more queries such as, "For others to see and hear you, your browser will request access to your camera and microphone. Please follow the instructions in the video above" and "Allow app.welo.space to use your camera and microphone?"



FIG. O

264.    As shown in FIG. P below, using the web browsing application operating on the guest network node, the guest user can configure the settings for "Cameras" and "Microphones" on the guest network node:[31]



FIG. P

---

[31] Guest Communication Session Device Selection
Source: product testing

265.    By clicking the button "Enter space", the guest user can establish a presence in the Welo space (virtual area).  The first user and the guest user can each respond to messages sent by the web browsing application and the client application, respectively.

266.    Claim 1 of the '851 patent also requires the step of "processing the one or more time-critical types of data streams and the one or more non time-critical types of data streams."  Welo's systems, software and services include this step.

267.    The Welo collaboration system supports real-time communications sessions through audio, video, text, chat, and avatar-position types of data streams.  In the real-time communication session between the first user and the guest user, the first user is operating a client network node, which is executing a client application.

268.    The guest user is operating a guest network node which is executing a web browsing application.  Each of the client application and the web browsing application has respective functionality to set up and exchange in the Welo space real-time audio, video, text, chat, and/or avatar-position data streams between the first client network node and the guest network node, and more specifically, as recited in the claim, to set up and exchange *time-critical* types of data streams (e.g., real-time video data streams) and *non-time-critical* types of data streams (e.g., text and chat data streams).

269.    Claim 1 of the '851 patent further requires the step of "monitoring at least one metric characterizing operation of the client network node during the processing of at least one of the time-critical types of the data streams."  Welo's systems, methods and software include this step.

270.    The Welo collaboration system can be integrated with the Zoom platform and infrastructure.  Utilizing the capabilities of the Zoom infrastructure, the Welo collaboration system

can monitor a metric characterizing operation of the client network node during the processing of at least one of the time-critical types of data streams. Welo integrated with the Zoom infrastructure can handle different types of data streams (time-critical and non-time-critical) differently.

271.   The Welo collaboration system integrated with the Zoom infrastructure can establish a connection between the first user and the guest user using the capabilities of Welo integrated with Zoom.

272.   A Welo space member such as the first user signs up with a Zoom account to integrate Zoom's audio, video and screen sharing features, as well as features like recording and transcription. Welo is available in the Zoom App Marketplace:[32]

"Overview"

> "Whether you gather people for regular meetings or are leading a one-time event, Welo's visual spaces recreate the look, feel, and flow of working together in-person. With streamlined access to people and information, Welo users report stronger connections to their colleagues and the context they need to thrive."

> "Now, with a paid Zoom One Pro, Business or Business Plus subscription, you get access to Welo premium features and more with Zoom Essential Apps. Terms apply. Gain premium features with exclusive space layouts, the ability to save multiple spaces, and live chat support."

> "It's like you're in person, or better."

> "Recreate the experience of working together in a physical space–where it's easy and natural to interact with colleagues and access information–right within Zoom."

273.   Welo integrated with Zoom is discussed in "Virtual Spaces That Feel Like Real Places:"

> "Fully integrated with Zoom

> "Simplify your tool set with the seamless integration of Zoom's audio, video, and features such as recording and transcription for the best of both worlds.

> ✓ Crystal-clear audio, video, and screen share

> ✓ Zoom's robust security features and encryption

> ✓ Extensive support for various devices and platforms"

---

[32] "Zoom App Marketplace", page 1



274.    A way for the first user to connect or integrate his Zoom account to the Welo collaboration system is to locate the Welo Virtual Office app in the Zoom Marketplace, then click "Add", then click "Allow" on the Zoom authentication page.

275.    After integrating his Zoom account into Welo, the first user can invite the guest user or another user to a Zoom meeting.  He can start meetings ("calls") in his Welo space to give the Welo space the benefits of the collaboration provided by the Zoom infrastructure, including load balancing and performance metrics related to quality of service (QoS).

276.    To start Zoom calls in the Welo space, the first space member clicks "Start Call" when ready to start a meeting or conversation.  The Zoom authentication page will open in his browser.  The user clicks "Allow" to enable Welo and Zoom to work together.  During the Zoom call in the Welo space, the "Zoom Meeting" screen is visably integrated with the "Welo" screen as shown in the Figure below:[33]

---

[33] Figure from "Welo for Zoom Overview" page 7



277.    Welo integrated with the Zoom infrastructure monitors a metric characterizing operation of the client network node during the processing of at least one of the time-critical types of the data streams (e.g., real-time video).  Welo integrated with Zoom connects real-time data streams on different types of communication channels which are respectively allocated for carrying the real-time data streams that are communicated by the first client network node of the first user and the guest network node of the guest user in the virtual area during a real-time communication session between the first client network node and the guest network node.

278.    When Welo is integrated with Zoom, a Welo virtual meeting will be hosted on or through the Zoom Multimedia Router at or within a Zoom Data Center.  As a result, Welo integrated with Zoom performs load balancing, monitors Quality of Service (QoS) metrics, and maintains operational and performance targets.

279.    On information and belief, one or more Zoom Multimedia Routers (MMR) within the Zoom Data Center operates to receive and transmit audio, video, and content among the host (e.g., first user) and participants (e.g., guest user or another user).

280.    On information and belief, in an on-premises deployment of the Zoom On-Premise Meeting Connector for an enterprise customer, the Zoom Multimedia Router (MMR), entitled

"Meeting Server in corp", is deployed within a virtual machine within the Zoom Meeting Connector.

281.    On information and belief, the Zoom Zone Controller (ZC) helps to decide which Zoom Multimedia Router (MMR) to connect to for the meeting based on the type of meeting traffic, e.g., video, voice, in-meeting chat, and data sharing.  It follows that the Zoom ZC can base the decision on the types of data streams being processed and carried, i.e., either time-critical or non-time-critical, as recited in Claim 1.

282.    Welo integrated with Zoom operates such that "each stream by itself can adjust to multiple resolutions".  In other words, the bit rate of a particular data stream such as a time-critical type of data stream (e.g., a real-time video data stream) can be increased or decreased based on a quality-of-service-based metric.  As a result, Welo integrated with Zoom performs monitoring of a metric (bitrate or resolution) to determine if a performance target (i.e., real-time video quality) is being met.  Specifically, this also enables Zoom to provide different levels of video quality based on the device and network capabilities.

283.    The Zoom platform supports multimedia routing of audio, video and chat from multiple participants and multi-bitrate encoding of audio, video and chat.  Given "multi-bitrate encoding of audio, video and chat", some of the data streams (e.g., real-time video) are treated as time-critical, whereas some of the data streams (e.g., text or chat) are treated as non-time-critical.  Some of the video streams received by the Zoom Multimedia Router (MMR) have at least two different frame rates, resolutions, and encoding.

284.    Zoom's infrastructure manages large numbers of video conferences while balancing Quality of Service (QoS), bandwidth limitations, and packet loss.  As a result, Welo integrated with

Zoom performs load balancing and monitoring of QoS based on performance metrics to manage and balance QoS, bandwidth limitations, and packet loss.

285.    Welo operating with Zoom employs a first real-time level and a second real-time level for various differing data streams, including audio, video, text, and chat data streams.

286.    On information and belief, Zoom includes an "Application Layer Quality of Service" which corresponds to Zoom's Adaptive Codec in Session Layer and/or surrounding layers. Zoom's Adaptive Codec in Session Layer operates to "optimize the video frame rate and resolution."

287.    The foregoing shows the step of "monitoring at least one metric characterizing operation of the client network node during the processing of at least one of the time-critical types of the data streams" as recited in Claim 1 of the '851 patent is employed by Zoom and Welo jointly.

288.    Claim 1 of the '851 further recites the step of "in response to a determination that the at least one metric fails to satisfy at least one operational target, dynamically adjusting the operation of the client network node with respect to at least one of the time-critical types of data streams and the non-time-critical types of data streams in accordance with a real-time performance targeting process." This step is used in the joint products, software and services of Zoom and Welo.

289.    On information and belief, with the Welo collaboration system integrated with the Zoom infrastructure, the Zoom infrastructure provides load balancing, monitoring of quality of service (QoS) metrics, and monitoring operational and performance targets. In response to a determination that at least one metric fails to satisfy at least one operational target, Welo integrated with Zoom dynamically adjusts the operation of the client network node with respect to the time-critical and non-time-critical types of data streams in accordance with a real-time performance targeting process.

290.    On information and belief, video streams are received by the Zoom Multimedia Router (MMR) from respective participants (e.g., the guest user or another user) or the host/meeting organizer (e.g., the first user), and Zoom automatically adjusts the streaming resolution to match what each participant's internet can handle, e.g., below 720p, it may shift to 640 or 360.

291.    On information and belief, since the Meeting Zones are duplicated for each data center with the exact same architecture and the Zoom infrastructure can easily add more zones on-the-fly for added capacity in each region, Welo integrated with Zoom "dynamically adjusts operation of the client network node" as recited in the claim.

292.    With Welo operating together with Zoom, the frame rate, resolution, and encoding of each real-time video stream can be determined, adjusted, or converted in real time by the Zoom Multimedia Router (MMR) during transmission.

293.    Audio streams and video streams are received by the Zoom Multimedia Router (MMR) from a participant (e.g., the guest user) or the host/meeting organizer (e.g., the first user).  The Zoom Multimedia Router (MMR) can selectively transmit audio streams and video streams to the host/meeting organizer and/or to the participant.  Some real-time video streams transmitted from the Zoom Multimedia Router (MMR) have different frame rates and/or resolutions.

294.    In the joint operation of Welo and Zoom, where the first user inviting a guest user to collaborate in the Welo space using Zoom's platform and infrastructure, the Zoom Multimedia Router (MMR) is able to transmit data streams to the first user (host and meeting organizer) and is able to transmit data streams to the guest user (the participant), and during that process some of the transmitted data streams have different frame rates and/or resolutions.

295.    When Welo is integrated with Zoom, Zoom's "Reactive Quality of Service Layer" corresponds to the "real-time performance targeting process" recited in Claim 1 of the '851 patent.

296.    Zoom and Welo list on their websites an instruction and step-by-step guide to end users explaining how to utilize the Welo and Zoom software using, among other things, the Welo User Guide and Zoom links to the Welo User Guide, as well as Zoom's instructions on how to integrate the Welo application into Zoom applications.

297.    Defendants have knowingly (since at least the date of this Complaint) and intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '851 patent (such as its customers in this District and throughout the United States).

298.    Defendants have been actively aware of the existence of the subject matter of the '851 patent as well as the other patents-in-suit, through the hiring of former Sococo employees, two of whom became founders of Welo.  On information and belief, through Zoom Ventures, Zoom has been aware through due diligence of the connection between the Welo employees and Sococo and the extensive patent portfolio awarded to Sococo for its inventions in the AI augmented conferencing space.

299.    From these prior associations, Defendants were aware of the subject matter and disclosures of the '851 patent at least six years prior to the filing of this Complaint.

300.    Defendants have, under 35 U.S.C. §271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '851 patent, by making, using, testing, selling, offering for sale and/or importing into the United States infringing video conferencing software as describe above.

301.    Defendants also indirectly infringe the '851 patent by actively inducing the direct infringement by third parties under 35 U.S.C. §271(b).

302.    Defendants continue to induce infringement of the '851 patent.

303.    Defendants have contributorily infringed and are contributory infringers because, with knowledge of the '851 patent (since at least the filing date of the Complaint), they supply a material part of a claimed combination, where the material part is not a stable article of commerce, and is incapable of substantial non-infringing use.

304.    Defendants contribute to their customers' infringement because, with knowledge of the '851 patent, Defendants supply the technology that allows their customers to infringe the '851 patent.

305.    Defendants have knowledge that their activities concerning their AI augmented video conferencing software infringe one or more claims of the '851 patent.

306.    Defendants' customers, such as consumers or end users, have infringed claims of the '851 patent by using the Welo and Zoom conferencing software in a manner proscribed by Defendants, and as such, Defendants' customers are direct infringers.

307.    Zoom and Welo have knowingly (since at least the date of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least claim 1 of the '851 patent (such as their customers in this District and throughout the United States.

308.    On information and belief, Welo has knowingly and intentionally directly and indirectly infringed the '851 patent since at least as early as 2015 through Welo CEO's knowledge of Sococo's patent portfolio and strategy through his prior position as CEO of Sococo.

309.    On information and belief, Zoom has knowingly and intentionally directly and indirectly infringed the '851 patent since at least as early a time when Zoom Ventures made an investment in Welo.  The time is unknown at present but is before the filing of this Complaint and would have coincided with due diligence undertaken to make the investment in Welo, or by other means.

310.    Zoom and Welo continue to induce infringement of the '851 patent.

311.    Zoom and Welo have contributorily infringed and are contributory infringers because, with knowledge of the '851 patent (since at least the date of this Complaint), they supply a material part of a claimed combination, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use.

312.    Zoom and Welo contribute to their customers' infringement because, with knowledge of the '851 patent, Zoom and Welo supply the technology that allows their customers to infringe the '851 patent.

313.    Zoom and Welo knew, known, have known or should have known that their activities concerning their video conferencing applications infringe one or more claims of the '851 patent.

314.    Zoom and Welo's customers, such as consumers or end users, have infringed claims of the '851 patent by using the Zoom and Welo video conferencing applications in a manner proscribed by Zoom and Welo, and as such, Defendants' customers are direct infringers.

315.    On information and belief, Zoom and Welo will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Instrumentalities (which are accts of direct infringement of the '851 patent) and Defendants have and will continue to encourage those acts with the specific intent to infringe one or more claims of the '851 patent.

316.    Zoom and Welo provide information and technical support to their customers, including promotional materials, product manuals, brochures, video, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Zoom and Welo's video conferencing applications (which are acts of infringement of the '851 patent).

317.    Alternatively, Zoom and Welo know and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Zoom and Welo video conferencing applications constitutes direct infringement of the '851 patent.

318.    On information and belief, Zoom and Welo's infringement of the '851 patent has been willful, and merits increased damages.

319.    On information and belief, Zoom and Welo have known that their activities concerning their video conferencing applications infringed one or more claims of the '851 patent since at least the date of this Complaint.

320.    On information and belief, Zoom and Welo have made no attempt to design around claims of the '851 patent.

321.    On information and belief, Zoom and Welo did not have a reasonable basis for believing that the claims of the '851 patent are invalid.

322.    On information and belief, Zoom and Welo's video conferencing applications are available to businesses and individuals throughout the United States, including in this District.

323.    Sococo has been damaged as the result of Zoom and Welo's willful infringement.  Upon information and belief, Zoom and Welo will continue to infringe one or more claims of the '851 patent unless and until they are enjoined by this Court.

324.    Zoom and Welo have caused and will continue to cause Sococo irreparable injury and damage by infringing one or more claims of the '851 patent.  Sococo will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Zoom and Welo are enjoined from infringing the claims of the '851 patent.

325.    While details of Zoom and Welo's infringement is provided in the foregoing enumerated paragraphs, Sococo reserves its right to provide greater detail and scope via its Preliminary and Final Infringement Contentions at the time required under this Court's scheduling order and local rules.

## COUNT IV – INFRINGEMENT OF THE '304 PATENT

326.    Sococo incorporates by reference the allegations set forth in paragraphs 1-325 as though fully set forth herein.

327.    On information and belief, Zoom and Welo directly and indirectly, infringe at least claim 1 of the '304 patent.

328.    On information and belief, Welo makes, uses, sells, offers to sell and/or imports Welo software, application, platforms and other means (referred herein as "virtual collaboration solutions") that infringe at least claim 1 of the '304 patent under under § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing virtual collaboration solutions. Through these activities, Welo also actively induces infringement by others under § 271(b) by at least providing to the public, at a minimum, a downloadable application, providing explicit instructions on how to set up, operate and use the Welo application through its "Welo User Guide" and other instructions on the Welo website at https://www.welo.space, in a manner that directly infringes the '304 Patent.

329.    Welo commits acts of patent infringement of the '304 patent by manufacturing, using, offering for sale, selling and/or importing at least the Welo application.

330.    Zoom commits acts of patent infringement of the '304 patent by at least using and selling the Welo application on its website at https://partner.zoom.us/solutions/welo, or by being directed to obtain the application from Zoom through the Welo website, https://www.welo.space/welo-for-zoom, or by joint infringement by combining the Zoom software and/or services with Welo software and/or services to provide a combined completed act of infringement.

331.    Claim 1 of the '304 patent describes a method "in a network communications environment supporting real-time communications between a user and other communicants operating respective

network nodes." Welo's application provides the same method and Zoom sells, offers for sale and uses the Welo application and therefore Welo and Zoom infringe at least claim 1 of the '304 patent.

332.    The Welo collaboration system and application provides an indication of presence of a user to one or more other communicants in a network communications environment. The Welo collaboration system can be implemented in a network communications environment for a company or organization's users.

333.    The network communications environment includes a network of nodes (network of computers) connected through one or more enterprise networks and/or the Internet. The network of computers includes a user network node and another network node. A user is associated with the user network node and another communicant is associated with the other network node.

334.    On information and belief, the Welo collaboration system implemented on a company's enterprise network and/or Internet contains at least one Welo Space. Welo spaces can be created as needed to accommodate growth. The Welo application for Zoom provides the ability to save multiple Welo spaces:[34]

> "Now with a paid Zoom One Pro, Business Plus subscription, you get access to Welo premium features and more with Zoom Essential Apps. Terms and apply. Gain premium features with exclusive space layouts, the ability to save ***multiple spaces***, and live chat support." ("Welo Visual Breakouts", Document 3, page 1, emp

335.    The user and the other communicant can each create Welo spaces in support of a company or organization's purposes for the respective Welo spaces. Purposes can include, e.g., bringing together hybrid teams, skill workshops, or social events.

336.    In the network communications environment, the Welo collaboration system supports real-time communication between the user and the other communicant. Collaborative realtime

---

[34] https://partner.zoom.us/solutions/welo, "Welo Visual Breakouts"

communications are supported between the user, who is associated with the user computer (the user network node) and is creator of a user Welo space, and the other communicant who is associated with the other computer (the other network node) and is a member of the user Welo space.

337.    Claim 1 of the '304 patent requires "establishing a presence for the user in a particular zone of a virtual area that is assigned to the user."  Welo and Zoom satisfy this claim limitation.

338.    In the Welo application, a user, associated with a user computer, creates a user Welo space in a company organization's enterprise network(s). The user Welo space is assigned to the user.

339.    The user Welo space includes a room within the user Welo space.  The user can be present and move within the room of the Welo space.  The room within the user Welo space corresponds to "a particular zone of a virtual area" and the user Welo space corresponds to "a virtual area that is assigned to the user."

340.    The user Welo space is established under governance rules.  The governance rules define who are members of the user Welo space and what such members can do. In accordance with the governance rules, the other communicant is a member of the user Welo space.  When the user or the other communicant enters the user Welo space, they are within the room within the user Welo space.

341.    On information and belief, in the Welo collaboration system, a member of a particular Welo space has an associated avatar object ("avatar") for the particular Welo space.  The avatar can be navigated and moved through the particular Welo space.  The member of the particular Welo space is able to access identities and positions of the other avatars of the particular Welo space and their respective locations within the one or more rooms of the particular Welo space.

342.    The user can set up the user Welo space to establish one or more real-time audio, video,

chat, and avatar-position stream connections between the user computer (used by the user) and the other computer (used by the other communicant). The user computer and the other computer are associated with the user avatar of the user and the other avatar of the other communicant, respectively.

343. The Welo User Guide illustrates in the Figure below a Welo space. Within the Welo space are geometric elements such as: several rooms, boundaries and walls of rooms, tables, and chairs. Additionally, the graphic below shows several avatars which are associated with members of the respective Welo space. The illustrated avatars are positioned in several rooms of the respective Welo space:



344. The user of the Welo collaboration system can create a Welo space on the company enterprise network. The example room shown in the Welo User Guide has geometric elements such as walls, furniture, a table, and seats. An avatar object ("avatar") of a member of the space is shown at the table in the room.

345. In Welo, an avatar can be positioned and moved between and among Welo spaces. The user and other communicants navigate around various Welo spaces using a mouse or other input device associated with a computer. The Welo collaboration system monitors and detects the navigation and position of respective avatars within rooms of the Welo spaces.

346.    Navigation of the avatars of space members within the created Welo space, and detecting and monitoring respective positions of avatars, are described in the Welo User with respect to avatars that are within a room within a Welo space.  The Welo collaboration system maintains data that identifies which space member is associated with a respective avatar and monitors the positions of respective avatars within the Welo space.

347.    The Welo collaboration system performs the recited "establishing a presence for the user in a particular zone of a virtual area that is assigned to the user."  The recited "a virtual area that is assigned to the user" corresponds to the user Welo space.   The recited "a particular zone" corresponds to the room within the user Welo space.

348.    The Welo collaboration system can determine and provide an indication of the presence of the members in the other Welo space.  The Welo collaboration system can monitor, detect, and list positions and movement of avatars within the Welo space.

349.    Claim 1 of the '304 patent further requires "transmitting a respective indication of the user's presence in the particular zone to each of one or more of the other communicants conditioned on the other communicant having a respective social network tie with the user that satisfies a respective governance rule that is associated with the particular zone.  This limitation is met by the Welo application.

350.    The Welo collaboration system includes one or more virtual areas, which are referred to as "Welo spaces".  Each Welo space includes one or more zones, which are referred to as "rooms".  The user is associated with the user computer.  The user creates the user Welo space.  The other communicant is associated with the other computer.  The other communicant, associated with the other computer, is a member of the user Welo space, and can be located within the user Welo space.

351.   The Welo space establishes one or more real-time audio, video, chat, and avatar-position stream connections between network nodes associated with respective members of the user Welo space.  The user computer and the other computer are network nodes associated with the user avatar of the user and the other avatar of the other communicant, respectively.

352.   The Welo collaboration system determines an "indication of the user's presence in the particular zone" of the virtual area, the Welo collaboration system determines the position of the user avatar with respect to the room of the user Welo space.

353.   Zoom and Welo list on their websites an instruction and step-by-step guide to end users explaining how to utilize the Welo and Zoom software using, among other things, the Welo User Guide and Zoom links to the Welo User Guide, as well as Zoom's instructions on how to integrate the Welo application into Zoom applications.

354.   Defendants have knowingly (since at least the date of this Complaint) and intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '304 patent (such as its customers in this District and throughout the United States).

355.   Defendants have been actively aware of the existence of the subject matter of the '304 patent as well as the other patents-in-suit, through the hiring of former Sococo employees, two of whom became founders of Welo.  On information and belief, through Zoom Ventures, Zoom has been aware through due diligence of the connection between the Welo employees and Sococo and the extensive patent portfolio awarded to Sococo for its inventions in the AI augmented conferencing space.

356.   From these prior associations, Defendants were aware of the subject matter and disclosures of the '304 patent at least six years prior to the filing of this Complaint.

357.   Defendants have, under 35 U.S.C. §271(a), directly infringed, and continue to directly

infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '304 patent, by making, using, testing, selling, offering for sale and/or importing into the United States infringing video conferencing software as describe above.

358.    Defendants also indirectly infringe the '304 patent by actively inducing the direct infringement by third parties under 35 U.S.C. §271(b).

359.    Defendants continue to induce infringement of the '304 patent.

360.    Defendants have contributorily infringed and are contributory infringers because, with knowledge of the '304 patent (since at least the filing date of the Complaint), they supply a material part of a claimed combination, where the material part is not a stable article of commerce, and is incapable of substantial non-infringing use.

361.    Defendants contribute to their customers' infringement because, with knowledge of the '304 patent, Defendants supply the technology that allows their customers to infringe the '304 patent.

362.    Defendants have knowledge that their activities concerning their AI augmented video conferencing software infringe one or more claims of the '304 patent.

363.    Defendants' customers, such as consumers or end users, have actually infringed claims of the '304 patent by using the Welo and Zoom conferencing software in a manner proscribed by Defendants, and as such, Defendants' customers are direct infringers.

364.    Zoom and Welo have knowingly (since at least the date of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least claim 1 of the '304 patent (such as their customers in this District and throughout the United States.

365.    On information and belief, Welo has knowingly and intentionally directly and indirectly infringed the '304 patent since at least as early as 2015 through Welo CEO's knowledge of

Sococo's patent portfolio and strategy through his prior position as CEO of Sococo.

366.    On information and belief, Zoom has knowingly and intentionally directly and indirectly infringed the '304 patent since at least as early a time when Zoom Ventures made an investment in Welo.  The time is unknown at present but is before the filing of this Complaint and would have coincided with due diligence undertaken to make the investment in Welo, or by other means.

367.    Zoom and Welo continue to induce infringement of the '304 patent.

368.    Zoom and Welo have contributorily infringed and are contributory infringers because, with knowledge of the '304 patent (since at least the date of this Complaint), they supply a material part of a claimed combination, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use.

369.    Zoom and Welo contribute to their customers' infringement because, with knowledge of the '304 patent, Zoom and Welo supply the technology that allows their customers to infringe the '304 patent.

370.    Zoom and Welo have knowledge that their activities concerning their video conferencing applications infringe one or more claims of the '304 patent.

371.    Zoom and Welo's customers, such as consumers or end users, have infringed claims of the '304 patent by using the Zoom and Welo video conferencing applications in a manner proscribed by Zoom and Welo, and as such, Defendants' customers are direct infringers.

372.    On information and belief, Zoom and Welo will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Instrumentalities (which are accts of direct infringement of the '304 patent) and Defendants have and will continue to encourage those acts with the specific intent to infringe one or more claims of the '304 patent.

373.    Zoom and Welo provide information and technical support to their customers, including

promotional materials, product manuals, brochures, video, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Zoom and Welo's video conferencing applications (which are acts of infringement of the '304 patent).

374.    Alternatively, Zoom and Welo know and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Zoom and Welo video conferencing applications constitutes direct infringement of the '304 patent.

375.    On information and belief, Zoom and Welo's infringement of the '304 patent has been willful and merits increased damages.

376.    On information and belief, Zoom and Welo have known that their activities concerning their video conferencing applications infringed one or more claims of the '304 patent since at least the date of this Complaint.

377.    On information and belief, Zoom and Welo have made no attempt to design around claims of the '304 patent.

378.    On information and belief, Zoom and Welo did not have a reasonable basis for believing that the claims of the '304 patent are invalid.

379.    On information and belief, Zoom and Welo's video conferencing applications are available to businesses and individuals throughout the United States, including in this District.

380.    Sococo has been damaged as the result of Zoom and Welo's willful infringement.  Upon information and belief, Zoom and Welo will continue to infringe one or more claims of the '304 patent unless and until they are enjoined by this Court.

381.    Zoom and Welo have caused and will continue to cause Sococo irreparable injury and damage by infringing one or more claims of the '304 patent.  Sococo will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Zoom and Welo are enjoined

from infringing the claims of the '304 patent.

382.    While details of Zoom and Welo's infringement is provided in the foregoing enumerated paragraphs, Sococo reserves its right to provide greater detail and scope via its Preliminary and Final Infringement Contentions at the time required under this Court's scheduling order and local rules.

## COUNT V – INFRINGEMENT OF THE '679 PATENT

383.    Sococo incorporates by reference the allegations set forth in paragraphs 1-382 as though fully set forth herein.

384.    On information and belief, Zoom and Welo directly and indirectly, individually and jointly, infringe at least claim 1 of the '679 patent.

385.    On information and belief, Welo makes, uses, sells, offers to sell and/or imports Welo software, applications, platforms and other means, referred to as "virtual collaboration solutions," that infringe at least claim 1 of the '679 patent under § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing virtual collaboration solutions.

386.    Through these activities, Zoom also actively induces infringement by others under § 271(b) by at least providing to the public, at a minimum, a downloadable application, providing explicit instructions on how to set up, operate and use the Welo application through its website, https://www.zoom.com which provide links to the Welo website and the  "Welo User Guide" and other instructions on the Zoom website in a manner that directly infringes the '679 Patent. Zoom also sells or makes available links to the public to the Welo website on the Zoom website.

387.    Welo and Zoom commit acts of patent infringement by manufacturing, using, offering for sale, selling and/or importing at least the Welo application; Welo and Zoom jointly infringe by

combining aspects of their platforms for video conferencing to produce an AI augmented conference for users of the Welo application.

388.    Zoom commits acts of patent infringement by at least using and selling the Welo application on its website, https://partner.zoom.us/solutions/welo, or by joint infringement by combining the Zoom software and/or services with Welo software and/or services to provide a combined completed act of infringement.

389.    Claim 1 of the '679 patent describes "a method" that is related to the methods, structures, software and services described in the patents asserted in Counts I, II and III.

390.    Welo practices the method claimed in Claim 1 of the '679 patent, and the Sococo patents provide real-time communication sessions in an augmented environment.    In the Welo collaboration system, first and second client communicants can engage in a real-time communication session, and a guest communicant can join the real-time communication session through a web browser application.

391.    The Welo collaboration system is a platform for virtual meeting environments that provides a visual interface for audio/video conferencing and real-time collaboration.    The Welo collaboration system provides users remote access to a virtual office via respective computational devices (or client nodes) such as laptops, desktops, etc.:[35]

---

[35] Source: "Welo - The new way to work (with captions)
https://vimeo.com/showcase/8440739



392.    Claim 1 of the '679 patent states the method step of 'managing a real-time communication session between client communicants operating respective client network nodes each of which is executing a respective real-time communications application that administers the real-time communication session through integration of functionality for (i) exchanging peer-to-peer real-time data streams in association with functionality for (ii) rendering a spatial visualization comprising a respective visual representation of each of the client communicants in a visual area, wherein the managing comprises establishing respective presences for the client communicants in the visual area, determining respective locations of the visual representations of the client communicants in the visual area, and managing real-time communications between the client communicants based on the determined locations of their respective visual representations in the visual area."  This step is provided in the Welo collaboration system, methods, software and services.

393.    The Welo collaboration system can be implemented in a network communications environment for a company or organization's users.  The network communications environment includes respective client network nodes (respective client computers) connected through one or more enterprise networks and/or the Internet.  A first client communicant is associated with a first

client network node and a second client communicant is associated with a second client network node.

394.    On information and belief, each of the first and second client network nodes executes a respective real-time communications application that administers the real-time communication session through integration of functionality for (i) exchanging peer-to-peer real-time data streams in association with functionality for (ii) rendering a spatial visualization comprising a respective visual representation of each of the client communicants in a visual area.

395.    The first client communicant is creator of a Welo space, and the second client communicant who is a member ("space member") of the Welo space.

396.    Each respective real-time communications application monitors, controls, connects and disconnects peer-to-peer real-time data streams in the Welo space between the first client communicant and his first client network node and the second client communicant and his second client network node during meetings and chats.

397.    In the Welo collaboration system, the first and second real-time communications applications perform connecting of peer-to-peer real-time data streams. The peer-to-peer real-time data stream connections include, among others, audio, video, chat, and avatar-position stream connections between the first client communicant and the second client communicant, respectively operating the first client network node and the second client network node.

398.    The first client network node includes a first microphone, a first camera, a first speaker, and a first video display screen. The second client network node includes a second microphone, a second camera, a second speaker, and a second video display screen.

399.    On information and belief, the rules for the Welo space operate to define the respective connection between sources of a peer-to-peer real-time data stream type and sinks of the respective

peer-to-peer real-time data stream type. Examples of the sources and the sinks for the first client network node and the second client network node include: the first microphone, the first camera, the first speaker, the first video display screen, the second microphone, the second camera, the second speaker, and the second video display screen.

400. Through execution and operation of the respective first real-time communication application and the second real-time communication application, a spatial visualization of a visual area (a Welo space) can be rendered. The spatial visualization includes a visual representation of each of the client communicants in the Welo space. In the Welo collaboration system, "visual representations" are referred to as avatars.

401. As moderator of the Welo space, the first client communicant establishes rules for connecting real-time data streams on different types of communication channels which are respectively allocated for carrying the real-time data streams that are communicated by the first and second client network nodes of the client communicants in the visual area (the Welo space) during a real-time communication session between the first and second client network nodes. The rules are embodied in the settings, preferences and configurations that are stored in the Welo account for the first client communicant.

402. On information and belief, the Welo collaboration system manages a real-time communication session between the first and second client communicants based on the determined locations of their respective avatars in the Welo space. An example of such managing based on determined location is illustrated in the "Welo User and Admin Guide" ("Welo User Guide") where the first client communicant can mute the microphones and turn off the cameras of other members of the Welo space.

403.    According to the Welo User Guide, instructions on how to mute the microphones are provided with language "Mute users microphone and turn off users camera" and "Space moderators can mute space member's microphone and camera." To mute the microphone, the first space member pulls down a "User Menu" and selects "Mute Microphone:"



404.    The rules for the visual area (the Welo space) further operate to define the peer-to-peer real-time audio stream type and the peer-to-peer real-time video stream type, respectively, in terms of the position of the first avatar and the position of the second avatar in relation to geometric elements in the Welo space. Example geometric elements include: the room, boundaries and walls of the room, and tables and seats within the room.

405.    The Welo collaboration system provides the recited "real-time communications application" in the form of a web interface application. The web interface application provides a window that graphically, virtually renders a visual area for a user to remotely access the visual space through web-enabled devices such as laptops, desktops, etc.:



406.    The Welo collaboration system provides the visual area (the Welo space) for exchanging peer-to-peer real-time data streams through which users can visualize the visual area with visual representations of other communicants or users who are also present in the visual area.  The Welo collaboration system enables its users to establish their presence at desired visual areas and communicate via chat and audio/video conferencing with co-workers or space members present in the same visual space.  As shown in the graphic below, "In Welo you can look around and see who is available:"[36]



---

[36] Graphical representation of Welo
Source: "Welo - The new way to work (with captions)"
https://vimeo.com/showcase/8440739

407. Also, as seen below, with Welo the visual area (the Welo space) can include a "Visitor Center:"[37]



408. With the Welo platform, Avatars can be positioned and moved within a room in the Welo space using a mouse or other input device associated with a computer. Each respective real-time communications application monitors and detects the navigation and position of respective avatars within the room in the Welo space.

409. Navigation and monitoring of respective positions of avatars within the Welo space are described in several examples in the Welo User Guide with respect to avatars that are within a room within a Welo space. The Welo collaboration system maintains data that identifies which space member is associated with a respective avatar and monitors the positions of respective avatars within the Welo space.

410. On information and belief, managing real-time communications between the respective network nodes of the first and second client communicants is based on the determined locations

---

[37] Welo layout of the rooms
Source: "Maro Sola's Introduction to Welo with Cliff Pollan (Full Version)"
https://www.youtube.com/watch?v=ZeVe4q1SXjw

of the respective visual representations of the first and second client communicants in the visual area, i.e., based on the position of the first avatar and the position of the second avatar in the Welo space.

411.    The Welo collaboration system enables such managing based on the current position of an avatar with respect to the microphone and camera media settings for a Welo space.  Welo provides the following instructions to its users:

> "User Mic and Camera Media Settings"
>
> "On the Settings > My Settings dialog, there is now a Media tab that allows configuration of how the microphone and camera will behave when the user enters a new room (from a double click, Join me request, or Knock acceptance)."
>
> "NOTE: The mic and cam automatically turn off after a person is in a room for a minute if no one else is present in the room."



412.    The first client communicant can select to maintain the state of his microphone and camera when switching rooms for when he moves to a new room in the Welo space.

413.    Further, the Welo User Guide instructs users that the first client communicant can select a setting to implement a switching rule for other members of his Welo space.  Specifically, the first client communicant can select a setting to cause microphones and cameras of members to be turned off when the avatar of the member is the only avatar in the room:

> "Mic and Camera Are Turned Off After One Minute When in Room Alone"
>
> "When a user is the only person in a room for more than one minute, their media (mic and camera) will be turned off."

"When the media is turned off, a pop-up dialog will appear to let the user know."



414.    By way of his or her respective real-time communications application, the first client communicant can ask another member of the Welo space, the second client communicant, or a guest, to join him or her in a room as shown in the Welo User Guide:

> "Ask someone to join you"
>
> "To ask someone in another room to join you in the room in which you're located, do the following:
>
> 1. Hover your mouse over their avatar.
>
> 2. Right-click and choose Ask <name> to Join from the context menu."

415.    In the Welo collaboration system, when the first client communicant right-clicks over the guest avatar, a "User Menu" is displayed.  On the "User Menu", the first client communicant can select the option "Ask GUEST to Join:"



416.    With the Welo platform, the following instructions are given:

"The user who sent the Join Me request will see this dialog."



417.    The Welo User Guide instructs and illustrates that the Welo collaboration system monitors and detects positions and movement of avatars associated with client communicants in the Welo space:

> "How to navigate within a Welo space
>
> "How to enter a room
>
> "To enter a room, hover your mouse over a room and double click within the room area."



418.    The Welo collaboration system establishes respective presences for the client communicants in the visual area (the Welo space), determines the respective locations of the client communicants in the visual area, and manages real-time communication sessions between the client communicants based on the determined locations of the respective visual representations

(avatars) in the visual area.  See below, "Connect instantly with one-click audio, video, and screensharing:"[38]



419.    The Welo collaboration system includes a web application operating on each client network node.  The respective Welo web applications ("real-time communications applications") operate on the client network nodes and administer real-time communication sessions through integration of functionality for exchanging peer-to-peer real-time data streams (e.g., audio, video, etc.) of the participants joining from their respective Welo web applications.

420.    The Welo collaboration system manages the real-time communication sessions going on in different rooms of the visual space (the Welo space) whereby communication occurring in one room of the Welo space is independent of the communication occurring in other rooms of the Welo space.

421.    In the Welo space, each of the respective client communicants is indicated by a visual representation (an avatar).  An avatar is an object controlled by the respective real-time communications application operating at the respective client network node.  The first client

---

[38] Welo Real-time Communication Session
Source: "Welo - The new way to work (with captions)"
https://vimeo.com/showcase/8440739

communicant is represented by the first avatar, and the second client communicant is represented by the second avatar. The respective real-time communications applications manage real-time communication sessions between the first and second client communicants based on the determined locations of their respective avatars in the Welo space.

422. The Welo collaboration system manages the real-time communication sessions between the communicants based on their locations in the visual area, whereby if a communicant enters a room of the visual area, a communication session will be established with the already present communicants in the room.

423. The Welo collaboration system manages a real-time communication session between client communicants operating respective client network nodes each of which is executing a respective real-time communications application. Such managing includes establishing respective presences for the client communicants in the visual area, determining respective locations of the visual representations of the client communicants in the visual area, and managing real-time communications between the client communicants based on the determined locations of the respective visual representations (avatars) in the visual area.

424. Claim 1 of the '679 patent further requires the step of "through a web browser application, interfacing a guest communicant operating the web browser application on a guest network node with the real-time communication session, wherein the interfacing comprises

establishing a presence for the guest communicant in a respective location in the visual area,

transmitting to the guest network node an interface specification comprising specifications of the visual representation of the visual area and the visual representations of the guest communicant and the client communicants and their respective current locations in the visual area, and

responding to messages received from the web browser application in connection with respective elements of the interface specification."

425.    According to the principles of the invention claimed in the '679, a guest communicant operating a web browser application on a guest network can interface with the real-time communication session between respective client network nodes of the first and client communicants.  The Welo collaboration system provides for either of the client communicants the capability of interfacing a guest communicant operating the web browser application on a guest network node with the real-time communication session between the first and second client communicants.

426.    The first client communicant, who is a member of the Welo space and is operating his respective communications application can generate a guest link that can be shared with any guest communicant to join the visual space (the Welo space).

427.    The guest link can be transmitted to the guest communicant to interface the guest communicant with the real-time communication session.  When the guest communicant clicks the link with their web browser application, such as an Internet browser, a presence for the guest communicant is established in a respective location in the virtual area (the Welo space).

428.    A member or guest of a particular Welo space is associated with a visual representation (also referred to as an avatar) of the member or guest.  In the Welo collaboration system, an interface specification is transmitted to the guest network node.

429.    The interface specification includes specifications of the visual representation of the visual area (the Welo space) and the visual representations of the guest communicant and the client communicants and their respective current locations in the visual area.

430.    The interface specification enables the visual representation of avatars, resources and elements of the visual area (the Welo space) to be created and rendered through the respective real-time communications applications operating on the respective client network nodes of the client communicants and the web browser application operating on the guest network node of the guest communicant within the Welo space.

431.    With the Welo platform, the avatars for the first client communicant, second client communicant, and guest communicant can be navigated and moved through the Welo space. A member of the Welo space can access identities and positions of the other avatars of the particular Welo space and their respective locations within the one or more rooms (zones) of the particular Welo space (visual space).

432.    The avatars for the first client communicant, second client communicant, and guest communicant can be navigated and moved through the Welo space. A member of the Welo space can access identities and positions of the other avatars of the particular Welo space and their respective locations within the one or more rooms (zones) of the particular Welo space (visual space).

433.    In the real-time communication session between first and second client communicants, each client communicant is operating a respective client network node, which is executing a real-time communications application. Each respective real-time communications application has integrated functionality for setting up and exchanging in the Welo space peer-to-peer real-time audio, video, chat, and/or avatar-position data streams between the first client network node, the second client network node, and the guest network node.

434.    In the Welo graphic below, "where your guests can pop the link in their browser and instantly join you," to utilize the "Guest Link" feature, the first client communicant uses a pointer

element to select "People" from the left-side vertical menu bar, then selects "Invite", and then selects "Guest Link:"[39]



FIG. 12 Accessing the Guest Link via Browser

435.    Using the Welo application, the first client communicant can invite the guest communicant to join him in a particular room of the Welo space using his respective real-time communications application.[40]

436.    Using the Welo platform, when the first client communicant right-clicks over the guest avatar, a "User Menu" is displayed.  On the "User Menu", the first client communicant can select the option "Ask GUEST to Join:"

---

[39] Source: "Quickstart Guide to Welo, Featuring the Zoom Integration"
https://www.youtube.com/watch?v=_mJQ-3nPsQg
[40] Welo User Guide at 40.



437.    A Welo Space Moderator or Welo Organization Administrator can configure a Welo room ("a visual area") to be a reception area for the guest communicant.  As seen below, the first client communicant, who is moderator of the Welo space, uses a pointer element to check a "Guest reception area" box (shown to the left of the pointer element) to select a room of the visual area (the Welo space) as the reception area for guests:[41]

Welo rooms

Each Welo space has one or more rooms.

Each Welo room:

- Has a maximum seating/standing capacity that governs how many members can be in it at any given time
- The maximum number of people that can be designed into a Welo is 250 people, but most rooms are designed and limited to hold a specific number such as 12
- Represents a distinct "audio zone", where only members within the room can hear each other

To configure a Welo room, a Welo Space Moderator or Welo Organization Administrator can configure the room settings by right-clicking within the room and choosing **Change Room Settings** from the context menu.

Change Room Settings

Room label

📷 Early Adopters

Enable media for this room

🔵 Yes    ⚪ No

Guest reception area

☐ Use this room (4 seats) as the guest reception area.

Presenter mode

☐ Space moderators and presenters are allowed to talk. Regular users and guests must request permission to talk.

Cancel    Save

*Change Room Settings screen*

---

[41] Welo User Guide at 11

438.    Using the Welo platform, when the guest communicant receives and clicks on the link that was transmitted to the guest network node when the first client communicant clicked on the "Guest Link" option, the Welo web browser application interfaces the guest communicant with the real-time communications session.    As seen below, the guest communicant joining the real-time communications session in the visual area (the Welo space) is prompted with one or more queries such as, "For others to see and hear you, your browser will request access to your camera and microphone.    Please follow the instructions in the video above" and "Allow app.welo.space to use your camera and microphone?:"



FIG. 14 Guest Communication Session
Source: product testing

439.    As seen below, using the Welo web browser application operating on the guest network node, the guest communicant can configure the settings for "Cameras" and "Microphones" on the guest network node:



FIG. 15 Guest Communication Session Device Selection Source: product testing

440.    For the Welo application, the first client communicant, who is moderator of the Welo space, establishes and stores rules for connecting real-time data streams on different types of communication channels which are respectively allocated for carrying the real-time data streams that are communicated by the first and second client network nodes of the client communicants in the visual area during a real-time communication session between the first and second client network nodes.

441.    These rules, settings, configurations, and preferences are stored in the Welo account of the first client communicant for the Welo space and embody the interface specification for the Welo space. The interface specification includes specifications of the visual representation of the visual area and the visual representations of the guest communicant and the client communicants and their respective current locations in the visual area (the Welo space).    The real-time communications applications are operable to transmit the interface specification to the guest network node.

442.    The guest communicant is placed in a respective location (i.e., a guest reception area) in the visual area (the Welo space).    The guest communicant using the guest network node is

presented with a graphical user interface that includes visual representations of various rooms, other participants' (such as client communicants') location in the visual area, the guest communicant's location in the visual area, etc.

443.    As seen below, with Welo the respective visual representations (avatars) of the first and second client communicants and/or the guest communicant are depicted with symbols that indicate status and capabilities of the network nodes, which function as visual clues such that users within and viewing the visual space can know whether a particular user is present, available for collaboration, has permissions to use communications technology, has microphone, camera or video turned on, etc.  In the graphic below a guest avatar of a guest communicant is visually denoted by the letter "G" and has a blue color, while presenting a visual cue that indicates microphone capability:



FIG. 16 Guest Communication Session   Source: product testing

444.    In the Welo graphic below, in which two avatars of communicants are shown in a room, "now once that person joins you, you're probably going to want to talk to them".  Each avatar presents a visual cue related to microphone capability:



FIG. 17 Graphical representation of communicants and room
Source: "Quickstart Guide to Welo, Featuring the Zoom Integration"
https://www.youtube.com/watch?v=_mJQ-3nPsQg

445.    The Welo collaboration system enables the guest communicant to communicate in real-time with the other participating communicants present in the visual space.  The Welo graphic below shows examples of chatting and screen sharing in real-time.  In the lower right corner, the guest communicant can use chat functionality to message the communications session saying, "Hello thank you for inviting me".  In the upper portion, a screen presenting textual content is being shared with the guest communicant through screen sharing functionality:



FIG. 18 Guest Communication Session Real-Time Data.  Source: product testing

446.    The interface specification for the Welo space (visual area) operates on the client communicant network nodes and the guest network node to define the respective connection between sources of a respective real-time data stream type and sinks of the real-time data stream type.  Examples of the sources and the sinks for the first client network node, the second client network node, and the guest network node include:  the first microphone, the first camera, the first speaker, the first video display screen, the second microphone, the second camera, the second speaker, the second video display screen, the guest microphone, the guest camera, the guest speaker, and the guest video display screen.

447.    The interface specification comprises a description of switching rules.  The switching rules for the Welo space include, for example:  rules controlling whether during a meeting in the Welo space, a client communicant or guest communicant can enter the Welo space or room; hear or see audio, video, or chat; access resources or files; share a screen; view shared screens; and/or receive a recording of the meeting in the Welo space.

448.    The first client communicant, as moderator of the Welo space, can access, update, and store the interface specification, which is embodied as stored settings, configurations, and preferences for the Welo space.  The interface specification enables the client communicants to respond to the messages sent by the web browser application in connection with respective elements of the interface specification.

449.    Therefore, the interface specification and the web browser application co-operate to interface the guest communicant, operating the web browser application on the guest network node, with the realtime communications session between participating client communicants within the Welo space.

450.    During such interfacing, a presence for the guest communicant is established in a respective location in the visual area.  Further, the interface specification, which includes the specifications of the visual representation of the visual area and the visual representations of the guest communicant and the client communicants and their respective current locations in the visual area, is transmitted to the guest network node.

451.    The respective real-time communications applications operating on first and second client network nodes enable response to messages received from the web browser application in connection with respective elements of the interface specification.

452.    Claim 1 of the '679 patent further states "wherein the interface specification transmitted to the guest network node comprises specifications for depicting cues indicating respective current communication states of communication channels respectively allocated for carrying real-time data streams communicated by the network nodes of the client communicants in the visual area independent of any communications received by the guest network node on the communication channels, and the visual representations change dynamically to reflect current real-time data stream activities on the respective communication channels over which respective ones of the client network nodes are configured to communicate."  This language is found in the Welo products, services, software and applications, and in products combined with Zoom products.

453.    The Welo collaboration system transmits the interface specification to the guest network node.  The interface specification transmitted to the guest network node comprises rules for connecting real-time data streams on different types of communication channels which are respectively allocated for carrying the real-time data streams that are communicated by the first and second client network nodes and the guest network node in the visual area during a real-time communication session.

454.    The interface specification further comprises specifications for depicting cues indicating respective current communication states of communication channels respectively allocated for carrying real-time data streams communicated by the network nodes of the client communicants in the visual area, independent of any communications received by the guest network node on the communication channels, and the visual representations change dynamically to reflect current real-time data stream activities on the respective communication channels.

455.    The interface specification enables the network nodes to render visual cues indicating the communication state of various communication channels (e.g., audio, video) and/or the communicant's connectivity status such as communicant's audio/video channel status.

456.    The Welo collaboration system provides visual cues indicating client communicant or guest communicant action or current communication state or capability of communication channels.  The visual cues indicate the current states of communication channels and/or activity, or the capability of a communicant's or guest's communication or media channels.  Example communication and media channels include audio, video, camera, microphone, sound playback, and/or display devices or systems.  Such cues can include, e.g., graphic symbols, letters, shapes, or colors.

457.    Welo uses visual representations and cues that vary dynamically to help a participant, such as a client communicant or guest communicant, quickly see, hear, react, and/or communicate based on what is happening in the visual area (the Welo space).

458.    In the Welo collaboration system, each communicant and guest is represented by a respective avatar.  As shown in the graphic below, a cue depicted at the top left corner of a yellow-colored avatar identified with the letter "S" seated at the table is shown with a red square outline around it, and represents the state of media streaming channels -- e.g., a camera graphic symbol

indicates video streaming capability, and the green hue or tint around the camera graphic symbol

indicates the state of the participant's video streaming capability is "on:"



FIG. 19   Visual cue when camera is ON  Source: product testing

459.    Further shown in the graphic above, another cue depicted at the top left corner of a blue-colored avatar, which is identified with the letter "A" and seated at the table, represents the status of media streaming channels -- e.g., a loudspeaker graphic symbol presents an "x" that can indicate that the participant is muted, or that the participant's sound playback capability is "off".

460.    Welo uses the green hue or tint around the camera graphic symbol associated with avatar "S" to visually indicate the state of the video capability being "on", and the loudspeaker graphic symbol that presents an "x" symbol visually indicates an inactive audio output of the corresponding avatar "A" within the visual space (Welo space).

461.    Additionally, in the graphic below, a yellow-colored avatar identified with the letter "S" is seated at the table.  The yellow-colored avatar presents a loudspeaker graphic symbol, which is shown with a red square outline around it.  The loudspeaker graphic symbol presents an "x"

symbol.  The "x" symbol adjacent the loudspeaker graphic symbol indicates the status of sound playback capability being "off".



FIG. 20   Microphone and Speaker status     Source: product testing

462.    The graphics above demonstrate that with Welo, the "interface specification transmitted to the guest network node" includes the Claim 1 recited "specifications for depicting cues indicating respective current communication states of communication channels respectively allocated for carrying real-time data streams communicated by the network nodes of the client communicants in the visual area independent of any communications received by the guest network node on the communication channels."

463.    As recited in the claim limitation, in the Welo collaboration system, the avatars (corresponding to the recited "visual representations") change dynamically to reflect current real-time data stream activities on the respective communication channels, such as by (a) presenting a green glow or hue around the visual representation (avatar) to indicate a positive action (e.g., presently speaking), or (b) presenting a strikethrough on a graphic symbol adjacent the visual representation (avatar) to indicate a negative action or capability (e.g., an inactive microphone).

464.    Thus, the changing green glow or hue circled around the avatar or a varying graphic symbol on the avatar satisfies the recited claim language "the visual representations change dynamically."

465.    Because a user, by using the settings, can optionally change either to show "Videos inside avatars" or to not show "Videos inside avatars", this satisfies the recited "depicting cues indicating respective current communication states of communication channels".

466.    Videos being displayed on an avatar is an example of a visual "cue" indicating the state of the video channel; and specifically, that the video channel is operational.  Because changing of the cues on avatars that indicate an operational state of video presentation can be accomplished by client communicants and guest communicants using the "Change User Settings" window and/or the "Video settings" dialog box, e.g., in order to change from "'Show Videos Inside Avatars' to 'Hide Videos Inside Avatars'" , the recited claim limitation "depicting cues indicating respective current communication states of communication channels" is satisfied.

467.    The Welo collaboration system practices the recited claim limitation "the visual representations change dynamically to reflect current real-time data stream activities on the respective communication channels over which respective ones of the client network nodes are configured to communicate."

468.    Zoom and Welo are both individual and joint infringers of at least claim 1 of the '679 patent, directly and indirectly.

469.    Zoom and Welo, individually and jointly, have, under 35 U.S.C. §271(a) directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, at least claim 1 of the '679 patent, by making, using, testing, selling, offering for sale and/or importing into the United States infringing systems and methods embodied in the Zoom and Welo applications.

470.    Zoom and Welo also indirectly infringe the '679 patent by actively inducing the direct

infringement by third parties under 35 U.S.C. §271(b).

471.    Zoom and Welo have knowingly (since at least the date of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least claim 1 of the '679 patent (such as their customers in this District and throughout the United States.

472.    On information and belief, Welo has knowingly and intentionally directly and indirectly infringed the '679 patent since at least as early as 2015 through Welo CEO's knowledge of Sococo's patent portfolio and strategy through his prior position as CEO of Sococo.

473.    On information and belief, Zoom has knowingly and intentionally directly and indirectly infringed the '679 patent since at least as early a time when Zoom Ventures made an investment in Welo.  The time is unknown at present but is before the filing of this Complaint and would have coincided with due diligence undertaken to make the investment in Welo.

474.    Zoom and Welo continue to induce infringement of the '679 patent.

475.    Zoom and Welo have contributorily infringed and are contributory infringers because, with knowledge of the '679 patent (since at least the date of this Complaint), they supply a material part of a claimed combination, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use.

476.    Zoom and Welo contribute to their customers' infringement because, with knowledge of the '679 patent, Zoom and Welo supply the technology that allows their customers to infringe the '679 patent.

477.    Zoom and Welo have knowledge that their activities concerning their video conferencing applications infringe one or more claims of the '679 patent.

478.    Zoom and Welo's customers, such as consumers or end users, have infringed claims of the '679 patent by using the Zoom and Welo video conferencing applications in a manner proscribed

by Zoom and Welo, and as such, Defendants' customers are direct infringers.

479.    On information and belief, Zoom and Welo will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Instrumentalities (which are accts of direct infringement of the '679 patent) and Defendants have and will continue to encourage those acts with the specific intent to infringe one or more claims of the '679 patent.

480.    Zoom and Welo provide information and technical support to their customers, including promotional materials, product manuals, brochures, video, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Zoom and Welo's video conferencing applications (which are acts of infringement of the '679 patent).

481.    Alternatively, Zoom and Welo know and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Zoom and Welo video conferencing applications constitutes direct infringement of the '679 patent.

482.    On information and belief, Zoom and Welo's infringement of the '679 patent has been willful and merits increased damages.

483.    On information and belief, Zoom and Welo have known that their activities concerning their video conferencing applications infringed one or more claims of the '679 patent since at least the date of this Complaint.

484.    On information and belief, Zoom and Welo have made no attempt to design around claims of the '679 patent.

485.    On information and belief, Zoom and Welo did not have a reasonable basis for believing that the claims of the '679 patent are invalid.

486.    On information and belief, Zoom and Welo's video conferencing applications are available to businesses and individuals throughout the United States, including in this District.

487.    Sococo has been damaged as the result of Zoom and Welo's willful infringement.  Upon information and belief, Zoom and Welo will continue to infringe one or more claims of the '679 patent unless and until they are enjoined by this Court.

488.    Zoom and Welo have caused and will continue to cause Sococo irreparable injury and damage by infringing one or more claims of the '679 patent.  Sococo will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Zoom and Welo are enjoined from infringing the claims of the '679 patent.

489.    While details of Zoom and Welo's infringement is provided in the foregoing enumerated paragraphs, Sococo reserves its right to provide greater detail and scope via its Preliminary and Final Infringement Contentions at the time required under this Court's scheduling order and local rules.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sococo respectfully requests the following relief:

A.    A judgment that Zoom and Welo have directly infringed either literally and/or under the doctrine of equivalents and continue to directly infringe, both individually and jointly, the Sococo patents-in-suit set forth in this Complaint;

B.    A judgment that Zoom and Welo have actively induced infringement and continue to induce infringement of the Sococo patents set forth in this Complaint;

C.    A judgment that Zoom and Welo have contributorily infringed and continue to contributorily infringe the Sococo patents-in-suit set for in this Complaint;

D.    A judgment and order requiring Zoom and Welo to pay Plaintiff damages under 35 U.S.C. §284, including treble damages for willful infringement as provided by 35 U.S.C. §284, and supplemental damages for any continuing post-verdict infringement through entry of the final

judgment with an accounting as needed;

      E.      A judgment that this is an exceptional case within the meaning of 35 U.S.C. §285 and Plaintiff is therefore entitled to reasonable attorneys' fees;

      F.      A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

      G.      A judgment and order awarding a compulsory ongoing royalty;

      H.      A judgment and order awarding Plaintiff costs associated with bringing this action;

      I.      A judgment granting a preliminary and permanent injunction that restrains and enjoins Defendants, their officers directors, divisions, employees, agents, servants, parents, subsidiaries, successors, assigns, and all those in privity, concert or participation with them from directly or indirectly infringing Sococo's patents-in-suit; and

      K.      Such further relief as the Court deems just and equitable.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ P. 38, Plaintiff hereby demands a trial by jury on all issues so triable.

ASHBY & GEDDES

*/s/ John G. Day*

_____
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff Sococo, LLC*

*Of Counsel:*

Edward A. Pennington
Beth Oliak
Pennington Oliak PLLC
1055 Thomas Jefferson Street, NW
Washington DC  20007
(202) 897-2725
epennington@pennoliak.com
oliakb@pennoliak.com

Dated:  January 28, 2025